## RICHARDSON v. GAGE et al.

Ill will by a witness toward a party is evidence of bias which may affect his credibility, and the right to show such fact on cross-examination cannot as a rule be denied without a prejudicial abuse of discretion; the proper scope of the trial judge's discretion being to limit the cross-examination to show such facts as might show the existence of hostility, excluding matters merely going to justify the hostility by the witness.

Witnesses may be impeached by showing acts tending to impeach their general reputation for truth in the community, and convictions for such crimes as involve veracity may be shown upon cross-examination or otherwise, both in civil and criminal cases; but a mere arrest under a charge of crime cannot be shown on cross-examination to impeach the witness' testimony, so that, in an action for conversion of plaintiff's horses, a question to defendant on cross-

examination whether he had not been arrested five years before for stealing a steer was not competent to impeach his credibility.

Error, in an action for the conversion of plaintiff's horses in permitting defendant to be asked on cross-examination whether he had not been arrested five years before for stealing a steer in order to impeach his credibility, was prejudicial, especially as the issue involved the alleged conversion of the horses by defendant by larceny.

An instruction that, if the jury believed that any witness had willfully testified falsely as to any material matter, they might reject all of his testimony except so far as it was corroborated by other credible evidence, was proper, so that it was error to refuse it and give an instruction which was substantially identical except for the omission of the word "willfully."

In an action against several defendants for the conversion of horses by larceny, a requested charge that, if the jury failed to find that all of the defendants participated in the conversion, they should find for defendants, was properly refused.

(Opinion filed, December 11, 1911.)

Appeal from Circuit Court, Lyman County. Hon. FRANK B. SMITH, Judge.

Action by George Richardson against Russel Gage and others From a judgment for plaintiff and an order denying a new trial, defendants appeal. Reversed, and new trial ordered.

*James Brown* and *J. G. Bartine,* for appellants. *J. E. House,* for respondent.

SMITH, P. J. Action in the circuit court of Lyman county for the conversion of five horses belonging to plaintiff through larceny thereof by the defendants from plaintiff. Verdict and judgment for plaintiff, from which, and an order overruling a motion for a new trial, defendants appeal.

This action was tried on the 15th day of January, 1906, and the judgment roll made up in the trial court on May 6, 1910. February 4, 1911, an order was entered denying appellants' motion for new trial, and on March 18, 1911, the record on appeal was filed in this court. At the trial, one Andrew Nightpipe was sworn and testified as a witness on behalf of plaintiff. His evidence discloses that, some time after the alleged larceny of the horses, the witness himself was tried and convicted of stealing the same horses. At the time of this trial he was an inmate of the penitentiary at Sioux Falls. He testified, in substance, that at the

time of the larceny he was at the residence of Joe Demarsh, one of the defendants, and that Joe Demarsh and the defendant Russel Gage went away from the house and shortly after came back driving the stolen horses, which were turned over to the witness Nightpipe; that shortly after Nightpipe and the other defendant, David Colomb, took charge of the horses and drove them some distance to the residence of Nightpipe's father; that the horses were thereafter used by the witness, and traded for other horses; that some time later the plaintiff, Richardson, learned the location of the horses and secured possession of two of them. The witness Nightpipe did not pretend innocence in the transaction at the time of this trial. At the criminal trial in which he was convicted of the larceny, he swore to an entirely different state of facts, testifying that he obtained the horses from one George Patterson, who was then deceased. On the witness stand all the defendants denied the entire transaction testified to by Nightpipe, and upon the issue of fact raised by this conflicting testimony the jury returned a verdict for plaintiff. The motion for a new trial contained 29 assignments of error which are reassigned upon this appeal, and, in addition, error is alleged in denying the motion for a new trial.

Of these assignments, we shall notice only those discussed in appellants' brief. At the trial the plaintiff, Richardson, was sworn as a witness on his own behalf, and on cross-examination by appellants' counsel was asked: "You have been quite unfriendly toward Mr. Gage for some time past, haven't you?" Answer: "We are not on the best of terms; that is, I do not think he likes me." He was then asked: "Is not it a fact in the month of August last year, you made an assault on Mr. Gage with a revolver and was arrested and pleaded guilty?" This question was objected to by defendant as incompetent, irrelevant, immaterial, and not proper cross-examination. The objection was sustained, and this ruling is assigned as error. The question could have been competent for no other purpose than to show hostility or ill feeling on the part of plaintiff toward the defendant as affecting credibility. The extent to which cross-examination is permissible for

the purpose of showing hostility or ill will affecting credibility is not clearly defined by the authorities.

In a general discussion of this subject, Wigmore, in his elaborate and learned work on Evidence (volume 2, § 943), says: "The various qualities available for impeachment having been surveyed and their limitations marked out, the next problem (ante, § 876) concerns the admissible modes of evidencing those qualities. These sources of evidence will be chiefly, either the conduct of the witness, or external circumstances. ·The evidence will thus consist most commonly of particular acts of behavior or particular events. Thus the distinction already noted (ante, § 878) between extracting impeaching facts on cross-examination, and presenting them by other witnesses, becomes of vital importance. The first topic may most properly deal with those qualities for the evidencing of which this prohibition of extrinsic testimony does not apply, namely, the qualities of bias, corruption, and interest; all being varieties of the single quality of emotional partiality (ante, § 940). Cross-examination will here be an important but not the exclusive mode of presentation." The learned author thereupon quotes the language of the court in McHugh v. State, 31 Ala. 320: "In considering the various modes by which the credit of a witness may be assailed, courts must observe the distinction between an attack upon his general credit, and an attack upon his credit in the particular case. Particular facts cannot be given in evidence to impeach his general (i. e., moral character) credit only, but may be to affect his particular credit; that is, his credit (due to bias or interest) in the particular cause. Thus the general credit of a witness .for the prosecution may be unassailable; he may be hostile to the prisoner, and on cross-examination may deny that he is so; and in such case who can doubt the right of the prisoner to prove the hostility." The learned author also lays down the rule that the largest possible scope should be given to attempt to procure evidence in that way, and that the scope of such attempts by way of cross-examination should be left chiefly to the discretion of the trial court, though he is inclined to the view that, owing to its great efficacy, the right to elicit facts of

this class upon cross-examination is one which may not be denied in the discretion of the trial court. Wigmore, vol. 2, § 1368. The author again says (section 945): "Three different kinds of emotion constituting untrustworthy partiality may be broadly distinguished—bias, interest, and corruption. Bias in common acceptance covers all varieties of hostility or prejudice against the opponent personally, or of favor to the proponent personally." It is also said that the doctrine of excluding facts offered by extrinsic testimony has never been applied where the question of bias as thus understood was under investigation, and that such facts may be offered either by extinsic testimony or by cross-examination. If the views of this learned author are to be accepted as a correct statement of the law, it may be very much doubted whether the court in this case may not have erred in denying defendant's counsel the right of cross-examination to show bias or hostility on the part of plaintiff toward the defendant Gage. State v. Frazer, 23 S. D. 304, 121 N. W. 790; State v. Malmberg, 14 N. D. 523, 105 N. W. 614; State v. Hakon (N. D.) 129 N. W. 234; State v. Sysinger, 25 S. D. 110, 125 N. W. 879.

The principle under discussion is entirely distinct from that considered by this court in State v. Lamont, 23 S. D. 174, 120 N. W. 1104.

[1] Personal ill will on the part of a witness toward a party to the action is evidence of bias which may affect credibility, and the right to elicit the fact on cross-examination may not often be denied without an abuse of discretion which would be deemed prejudicial to the litigant. Labeau v. People, 34 N. Y. 233; U. S. v. Wood, 4 Dak. 455, 33 N. W. 59. In such cases, the proper scope for the exercise of discretion by the trial court is in limiting the cross-examination to a disclosure of such facts only, as may show the existence of hostility, and rejecting any matters which might be pertinent only to a justification of hostility on the part of the witness, for it is the existence of the feeling which is material, and not the right or wrong in the transaction which occasions it. State v. Frazer, supra.

[2, 3] But a different question, and one which we think does fall within the rule approved by this court in the Lamont Case,

is presented by another ruling of the trial court. On cross-examination of Gage, one of the defendants, respondent's counsel asked the witness, "Were you arrested five years, ago for stealing a steer from Edward Kelley?" and over proper objections the witness was compelled to answer the question. His answer was, "Yes, sir." It is perhaps true that convictions of crime are generally held admissible as affecting credibility, and especially such as import moral turpitude, though the decisions are not uniform as to the classes of crime which tend to show moral turpitude. In many of the states, the rule is statutory. In the absence of statutory provisions, the rule is variously construed and applied in different states. In those in which general bad character may be proved as affecting veracity, convictions, and sometimes even arrests, indictments, or charges of criminal misconduct, are held competent to be shown upon cross-examination, in the discretion of the trial court. But in those jurisdictions in which veracity character, as distinguished from general bad moral character, is recognized as the true principle underlying the rule, it is quite generally held that only convictions of crimes such as may be deemed to affect the character of the witness for truthfulness are held relevant and admissible. In many of the states the decisions of the same court in the application of these rules are found to be inconsistent and conflicting. A decision may be found to sustain almost any ruling made by a trial court. Wigmore, vol. 2, § 987, says: "The state of the law upon the foregoing topics illustrates the truth (not as often judicially appreciated as it ought to be) that there are half a hundred independent jurisdictions within our boundaries, and that it is impossible to make use of all the rulings as though they were valid precedents for every jurisdiction. The shuttlecock citation of decisions backward and forward in and out of their proper jurisdictions has done much to unsettle and confuse the law. The greatest judicial service that can be rendered today is to keep the line of precedents clear and inflexible in each jurisdiction." In this state the rule of veracity character, as expressed in the practice of impeachment by general bad reputation for truthfulness in the community, has been recognized and adopted, and convictions for crime of such kinds as may be relevant to

veracity character may be shown either by the record of conviction or upon cross-examination. And in this respect the rule is the same in both civil and criminal actions. But the rule has not been extended beyond these limits, and in this state it has been held that arrests on indictments or charges of crime are not competent even on cross-examination, and that the reception of such evidence over proper objection is prejudicial error requiring a reversal of the judgment. State v. Lamont, supra. In addition to the authorities cited in the Lamont Case as sustaining this rule, the following are in point: State v. Kent, 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518; State v. Bryant, 97 Minn. 8, 105 N. W. 974; McKesson v. Sherman, 51 Wis. 303, 8 N. W. 200; Germinder v. Machinery Mut. Ins. Ass'n, 120 Iowa, 614, 94 N. W. 1108; People v. Irving, 95 N. Y. 541; Van Bokkelen v. Berdell, 130 N. Y. 141, 29 N. E. 254; Canada v. Curry, 73 Ind. 246.

In People v. Crapo, 76 N. Y. 288, 32 Am. Rep. 302, cited by this court in the Lamont Case, the accused was on trial for larceny and testified as a witness in his own behalf. On cross-examination he was compelled to answer the following question: "Were you also in 1869, along in February or March, arrested on a charge of bigamy?" The accused made no claim of privilege, but the testimony was objected to as incompetent, and the Court of Appeals held it reversible error to compel an answer, for the specific reason that the question did not legitimately tend to impair the credibility of the witness, and was not competent for any purpose. The question asked the defendant Gage on cross-examination, whether he had been arrested five years ago, for stealing a steer from one Kelley, was plainly irrelevant to any issue in the case, and was not competent as tending to impeach the credibility of the witness, and the answer wrongfully compelled could not have been otherwise than prejudicial to appellant, especially in view of the specific issue before the jury, which involved the alleged conversion of the horses by larceny of the defendants. Appellants' counsel further complain that defendants were unduly limited in their right of cross-examination, as to statements made by the witness Nightpipe upon his trial for larceny of the horses,

which are the subject of this action. An examination of the record satisfies us that no error is shown.

[4] Appellants further complain of an instruction of the trial court as to the weight to be given the testimony of an impeached witness. Counsel requested the court to charge the jury as follows: "If you believe that any witness has willfully testified falsely as to any material matter, you may reject all the testimony of such witness, except so far as you find it corroborated by other credible evidence in the case." The trial court refused this instruction, and gave the jury an instruction almost identical, except the omission of the word "willfully." The instruction requested by appellants correctly states the rule of law and should have been given by the trial court. McPherrin v. Jones, 5 N. D. 261, 65 N. W. 685.

[5] Appellants' assignment of error in refusal of the trial court to instruct the jury "that, if the jury fail to find that all of the defendants participated in the conversion, their verdict should be for the defendants," is wholly without merit.

Because of the errors in cross-examination above discussed, the judgment and order of the trial court are reversed, and a new trial ordered.