MOBERG, Respondent, v. SCOTT, Appellant.

(175 N. W. 559.)

(File No. 4589. Opinion filed December 16, 1919. Rehearing denied
January 13, 1920.)

1. **Seduction—Sale of Opium to Plaintiff's Husband, Damages For—
Circumstantial, Conflicting, Evidence, Sufficiency.**

In a suit for damages for sale of drug containing opium to
plaintiff's husband. from the effects of which he died, held,
that the evidence, though largely circumstantial, and much
conflicting, was ample to sustain jury's finding that husband's
physical and mental condition unfitted him to give his wife
aid, etc., that the husband's death was caused by use of the
drug, which was wrongfully, etc., furnished by the defendant.

2. **Evidence—Use, Effect, of Opium Drug, On Health, Non-expert
Testimony Concerning, Competency.**

Evidence by plaintiff and other witnesses in a suit for dam-
ages for wrongful sale to plaintiff's husband of drug contain-
ing opium, from the effects of which he died,—concerning
condition and health general demeanor, etc., was competent.

3. **Same—Expert—Physician's Conclusions, Opinions, Re Cause of
Illness, Death, Nature of Disease, Competency—Foundation.**

In such suit attendant physician's testimony giving conclus-
ions and opinions as to cause of husband's illness and death,
and nature of his disease, was competent; the facts testified
to by him constituting sufficient foundation therefor.

4. **Same—Physician's Opinion That Husband Suffered From Opium
Poisoning, Whether Taking Case From Jury—Futile Objec-
tion, Rule.**

The testimony of such physician, as to what disease or mal-
ady, husband suffered from, that he was suffering "from the
effects of opium poisoning," did not in effect take from jury
determination of an ultimate fact; especially in that objection
was limited to stating it was "incompetent, irrelevant," etc.,
such objection failing to specify wherein the incompetency lay;
the only exception to such rule being where it clearly appears
the objection could not have been obviated had specification
been pointed out.

5. **Same—Damages From Sale to Husband of Opium Drug—Non-
license to Sell, Evidence Of, Competency Re Good Faith, Ex-
emplary Damages.**

Proof, in such suit, that defendant had no license to sell
opium or opium drugs, was competent, as negativing right to
sell on prescription, and as bearing on defendant's good faith,
therefore on plaintiff's right to recover exemplary damages.

6. **Same—Damages From Sale of Opium Drug—Husband's Checks Cashed at Defendant's Store, As Evidence of Frequent Visits, Immateriality Of—Prejudice.**

Evidence, in a suit for damages from sale to plaintiff's husband of opium drugs, that numerous checks drawn by husband in defendant's favor and which were admittedly cashed by him at his store, was non-prejudicial to defendant, though immaterial, and should have been excluded.

7. **Damages—Sale of Opium Drug to Plaintiff's Husband—Actual, Exemplary, Damages, Verdict Embracing Exemplary, Evidence Ample—Instruction Re Amount of Verdict, Involving Fraud, Malice—Inferential Evidence of Malice—Statute Limiting Recovery, Non-applicable.**

Where in a suit for damages from sale by defendant to plaintiff's husband of opium drugs, from effects of which he died, complaint asking for $10,000 actual and $5,000 exemplary damages, court having properly instructed that if jury believed evidence warranted, they could find to full amount of $15,000, verdict being for $12,500, defendant's-appellant's objection being want of proof that he was guilty of fraud, oppression or malice toward plaintiff, as essential to verdict of exemplary damages, and that (Laws 1909, Ch. 301) recovery was limited to $10,000; held, it will be presumed jury found all facts in plaintiff's favor, i. e. that defendant had intentionally and wrongfully sold the opium knowing its character, and that deceased was using same and being injuriously affected thereby; that to so find was to find malice; said statute limiting recovery to cases for "pecuniary injury only," and where "the act, neglect, or default is such as would have entitled the party injured" to recover "if death had not ensued;" the facts not warranting such right of action.

8. **Evidence—Damages for Sale of Opium Drugs—Defendant's Previous Pleas of Guilty Re Criminal Charges, Admissions Re Pleas, Whether Prejudicial—Such Admission "Bearing Upon Veracity" — Impeaching Testimony — Record Re Conviction, Whether Essential—Oral Admission, Effect.**

Defendant's admission, on cross-examination, in suit for damages for sale by him to plaintiff's husband of opium drugs, from effects of which he died—that he had plead guilty to six different criminal charges, including selling liquor without license, and to minor, and to be drank as beverage, and selling poison without label, was not prejudicial re jury's minds and as foreign to issue; such evidence being competent as bearing upon deefndant's veracity, and as proper impeaching testimony; the record of conviction not being the only proper evidence; such a record being no more convincing, or less liable to error, than witness's own admission under oath.

**9. Witnesses—Cross Examination of Defendant, Re Impeachment— Rule, Scope of Application—Confession of Former Guilt, As Affecting Credibility.**

The rule as to cross examination of witnesses for purposes of impeachment applies to examination of a party taking the stand in his own behalf, as well as to other witnesses; and defendant's admission on cross examination, in suit for damages from sale by him of opium drugs to plaintiff's husband, that he had plead guilty to sundry criminal charges invclving unlawful sales of liquor, and of poison without label, was not prejudicial as leading jury to believe that defendant was "a habitual criminal totally undeserving of any consideration whatever;" since, that evidence may tend to prejudice jury is no ground for denying cross examination of witness for impeachment purposes; trial court's discretion re limiting the answer to impeachment of witness's veracity; and, unless discretion is clearly shown to have been abused, trial court should be sustained; especially where cross examination was directed to a time so recent that jury would fairly infer that defendant· had not since become a man of different type. **Held,** further, that jury might fairly conclude that testimony of one guilty of the several offenses admitted by him, was entitled to less credit than that of one who has always been law abiding.

**10. Briefs—Aspersive, Non-dignified Argument In—Charging Expert Witness With "Frame Up" Re Heavy Damages—Reprehensible Chicanery.**

Where appellant's brief is permeated with aspersive matter not rising to dignity of argument, and charging respondent's expert witness with being party to a "frame up" designed to mulct appellant in heavy damages, no evidence in record sustaining same, **held,** attorneys as officers of court should not stoop to such chicanery.

McCoy, J., not sitting.

Appeal from Circuit Court, Brown County. Hon. Frank Anderson, Judge.

Action by Mellie Moberg against H. F. Scott, to recover actual and exemplary damages resulting from plaintiff's loss of conjugal consortium during her husband's illness and preceding his death, and for damages resulting from his death, which sickness and death were alleged to have been caused by defendant unlawfully, etc., furnishing deceased with commodities of which opium was an ingredient. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

See 38 S. D. 422.

*Thomas L. Arnold,* and *Seth Teesdale,* for Appellant.

*Campbell & Walton,* for Respondent.

(2)  To point two of the opinion, Appellant cited: State v. Hyde, 234 Mo., 200 Ann. Cas. 1912 D., p. 191, par. 4.

(3)  To point three, Respondent cited: Rogers on Expert Testimony, Sec. 50; State v. Moeller (N. D.), 138 N. W. 981; note, pp. 1056-1076, L. R. A. 1915 A.; State v. Kemmel, 23 S. D. 465, 122 N. W. 420.

(4)  To point four, Appellant cited: Keefe v. Armour & Co. (Ill.), Ann. Cases 1914 B, p. 188; Mageau v. Great Northern Ry. Co. (Minn.), 119 N. W. 200.

(7)  To point seven, re damages, Appellant cited: Laws 1919, Ch. 301.

(8)  To point eight, Appellant cited: State v. Tarlton, 22 S. D. 495.

(9)  To point nine, Appellant cited: Rosum v. Hodges, 1 S. D. 308.

Respondent cited: 1st Thompson on Trials, p. 404; Wilbur v. Flood, 16 Mich. 40.

WHITING, J.  Action to recover actual and exemplary damages occasioned by plaintiff's loss of conjugal consortium during a period of illness preceding the death of plaintiff's husband, and for damages resulting from his death, which sickness and death were alleged to have been caused by defendant's unlawfully, willfully, maliciously, and knowingly furnishing the deceased with commodities of which opium was an ingredient.  The complaint was upheld in Moberg v. Scott, 38 S. D. 423, 161 N. W. 998, L. R. A. 1917D, 732.  Our holding in the above case is supported by the holding in Tidd v. Skinner, decided in 1919, and reported in 225 N. Y. 422, 122 N. E. 247, 3 A. L. R. 1145.  See, also, notes 3 A. L. R. 1152. We refer to our former opinion for a full statement of the nature of this action.  The answer was, in effect, a general denial. Verdict and judgment being for plaintiff, defendant appealed from such judgment and from an order denying a new trial.

[1] Appellant questioned the sufficiency of the evidence both by motions to direct verdict and, after verdict, by specifica-

tions of particulars, wherein it is claimed that the evidence was insufficient to support such verdict. We deem it unnecessary to review the evidence. It was largely circumstantial in its nature, but, while there was much conflict therein, there was ample from which the jury was warranted in finding that plaintiff's husband, for the last year or more of his life, was in a physical and mental condition unfitting him to give to his wife that aid, support, society, and companionship to which she was entitled, and which she had theretofore enjoyed; that such condition and the death which followed were caused by the husband's use of a drug containing opium, and that such drug was wrongfully, unlawfully, and knowingly furnished the husband by defendant.

[2] Appellant assigns error in the admission of answers to certain questions asked respondent and certain of her witnesses on direct examination, and in the refusal of the court to strike out the answers thereto; appellant contends that there was a lack of proper foundation for such evidence, and that it consisted largely of opinions and conclusions. As illustrative of the questions asked is the following, which was asked respondent after witness had testified to the fact of her marriage to deceased in 1905 and their living together thereafter: "What was the condition of Mr. Moberg's health up to about 1912?" Respondent contends that this and similar questions "called for scientific knowledge in research, which the witness did not possess, and she was not qualified to answer the questions propounded. * * *" None of these witnesses were assuming to testify as experts. This was all the evidence of lay witnesses testifying as to their observations touching the health, general demeanor, etc., of deceased during the time of his alleged illness and prior thereto. That such evidence is competent is too well settled to need any citation of authority in support of its reception; but see Jones on Evidence, § 366 and cases cited thereto.

[3, 4] Appellant contends that the court erred in allowing a physician, called by respondent, to give "his conclusions and opinions upon ultimate facts as to what produced the illness and death of the respondent's husband"; furthermore, he contends that there were no facts in evidence upon which an expert

opinion could be based, and that the witness had not shown himself qualified to testify as an expert. With these last contentions we cannot agree. There were sufficient facts testified to by this very witness—matters claimed to have been observed by him—upon which to base his conclusions and opinions; moreover, there had been ample evidence to establish his qualification as an expert. One question asked was:

"In your treatment, continuing up to the time of his death, I wish you would state to the jury what in your judgment, what disease or malady he was suffering from."

Appellant contends that, by receiving, in answer, this witness' opinion that deceased "was suffering from the effects of opium poisoning," the court took from the jury the determination of one of the ultimate facts which should have been passed upon by such jury. Appellant cites State v. Hyde, 234 Mo. 200, 136 S. W. 316, Ann. Cas. 1912D 191. Appellant would have presented for our determination an important question of practice if it had previously been presented to the trial court by a proper objection. The objection upon which appellant attempts to predicate this particular claim of error was:

"Objected to as incompetent, irrelevant, and immaterial, and no foundation laid, as the witness at this time has not shown himself qualified to testify as an expert, and assuming a fact in evidence which has not been proven."

It will be seen that no part of the above objection called the attention of the trial court to the point now urged. The ground of objection now urged by appellant is, in effect, that such answer sought was incompetent, but it is a settled rule of practice in this state that an objection that evidence sought is "incompetent," without specifying wherein the incompetency lies, presents nothing for a trial court's consideration. State v. Devers, 32 S. D. 473, 143 N. W. 364. The only exception to such rule is where it clearly appears that the objection could not have been obviated had the same been specifically pointed out. McCabe v. Desnoyers, 20 S. D. 581, 108 N. W. 341. A slight change in the wording of the question would have obviated the specific objection now urged. 11 R. C. L. 583-585. We do not want to be understood as intimating that the question and

answer were properly subject to the specific objection now urged.

[5] Appellant contends the court erred in allowing proof that appellant had no license as required by local ordinance, authorizing him to sell opium or drugs containing opium. We think such evidence competent, both because it negatives any right to sell even on a doctor's prescription and because it has a direct bearing upon the good faith of appellant, and therefore on the right of respondent to recover exemplary damages.

[6] Appellant contends that the court erred in receiving in evidence a large number of checks drawn by deceased in appellant's favor, and which appellant admitted were cashed by him at his store. These exhibits were, to our mind, practically immaterial. Respondent urges that they were offered to establish the fact, then not established, but afterward clearly appearing, that deceased often visited appellant's drug store. But even though such exhibits were immaterial and should have been excluded, we fail to see wherein their receipt could in the slightest have prejudiced appellant.

[7] Respondent asked for $10,000 actual and $5,000 exemplary damages. Under the court's instructions the jury, if it believed the evidence warranted same, could have found to the full amount of $15,000, and it did return a verdict of $12,500. Appellant contends that the court erred in advising the jury that it could find damages in excess of $10,000; (a) because there was no proof that appellant was guilty of fraud, oppression or malice toward respondent—an essential to a verdict for exemplary damages; (b) because chapter 301, Laws 1919, limits the recovery to $10,000. We must presume that the jury found all the facts in favor of respondent. If so, it must have found that appellant had intentionally and wrongfully sold respondent's husband opium, knowing the character of the drug, and knowing that deceased was using same and being injuriously affected thereby. To so find was to find malice. 17 C. J. 984; Baxter v. Campbell, 17 S. D. 475, 97 N. W. 386.

Appellant suggested no reason whatsoever why damages in excess of $10,000 could not be recovered, if malice was proven and therefore exemplary damages recoverable, except the pro-

visions of chapter 301, Laws 1919, now §§ 2929-2931, Rev.
Code 1919. Actions under such sections are for "pecuniary
injury" only, and can only be brought where "the act, neglect,
or default is such as would have entitled the party injured to
maintain an action and recover damages in respect thereto, if
death had not ensued." It does not appear that the facts of
this case were such as would have given deceased a right of
action if he had lived.

[8] Appellant testified in his own behalf, and upon cross-
examination was asked as to whether he had not pleaded guilty
to some six different criminal charges, including selling liquor
without license, selling liquor to a minor, selling liquor to be
drank as a beverage, and selling poison without a label. He was
required to answer these questions, and admitted that he did
plead guilty to such charges. He contends that it was error to
ask such questions and require him to answer same; that the
sole purpose was to prejudice the minds of the jury through
the presentation of matter entirely foreign to any question at
issue. Respondent contends that she had a right to this evi-
dence, "as bearing upon his veracity"—in other words, she
contends that this was proper impeaching testimony. Appellant
meets this contention with the claim that, even if evidence of
conviction of crimes is competent to impeach a witness, the
only proper evidence is the record of conviction. This seems
at one time to have been the accepted rule, but the trend of
decisions has, for many years, been away from such a holding,
and to-day the great weight of authority sustains the right
to require a witness, upon cross-examination, to answer as to
whether he had ever been convicted of criminal offenses, and
as to the particular crime or crimes of which convicted. Wigmore
on Evidence, §1270; Elliott on Evidence, §982; Clemens v. Conrad,
19 Mich. 170; Real v. People, 42 N. Y. 270. Perhaps the best
exposition of the reasons supporting this rule is to be found
in the opinion in State v. Knowles, 98 Me. 429, 57 Atl. 588,
which opinion is highly commended by Wigmore in section 1270
of the supplement to his work on Evidence. We quote the
following therefrom:

"In a technical sense the record may be the best evidence,

and the rule of primariness may require its production. This general rule, however, is of no great value, unless in its application to the subject under consideration it is necessary for the interests of justice to avoid error, exclude falsehood, and promote the truth. It can hardly be claimed that a record of conviction is any more convincing to the mind, or less liable to error, than is the witness' own admission of the fact under oath. He may well be presumed to know what the truth is. There is very little possibility of his being mistaken as to the fact of the conviction, and none as to the identity of the party convicted. He has every inducement of self-interest to protect his good name and reputation, and it is inconceivable that he will falsely accuse himself. * * * To hold that we cannot receive as evidence the witness' own admission of a fact which he has every inducement of self-interest to deny, an admission which can be wrung from him by the all-compelling power of truth alone is to exalt the shadow above the substance; to return to the reasoning and results of the earlier and darker period of the law's development, rather than to those which have obtained and prevailed in modern and more enlightened times."

[9] This rule, as to cross-examination of witnesses for purposes of impeachment, applies to the examination of a party who takes the stand in his own behalf as well as to other witnesses. See above authorities; Jones on Evidence, Civil Cases, § 836; State v. Kent, 5 N. D. 516, 541, 67 N. W. 1052, 35 L. R. A. 518.

But appellant most strenuously urges his contention that this cross-examination should not have been allowed because it tended to prejudice the jury, "and led them to believe that the appellant was an habitual criminal, totally undeserving of any consideration whatever. * * *" Analyzed, this contention amounts to this: Cross-examination for impeachment purposes may become improper if too strong a case of impeachment is made out. That it may tend to prejudice the jury is no ground for denying the right to cross-examine a witness for impeachment purposes. It might as well be urged that evidence of collateral matters, otherwise perfectly competent, relevant and material,

should not be received if perchance such matters are of a nature that, if proven, they would tend to prejudice a jury. State v. Kent, supra. Of course the trial court should see to it ·that no question, the answers to which would tend to· criminate, disgrace or degrade a witness, are allowed, unless the· answers sought would also tend to impeach the veracity of such witness. The ruling upon the admission of answers to such' questions must of necessity be left to the sound discretion of the trial court; and, unless there has been a clear abuse of such discretion, the rulings of the trial court should be sustained. Jones on Evidence, Civil Cases, § 834. The dates of the crimes to which the cross-examination was directed were not so long past that the court or the jury could fairly presume that, through mere lapse of time, the appellant had become a man of a different type than the commission of such offenses might lead them to believe he was at the time of their commission. Moreover, we are convinced that a jury might fairly conclude that the testimony of one who had been guilty of the several offenses admitted by appellant was not entitled to the same credit as would be that of a person who had at all times been a law-abiding citizen. There certainly was no such clear abuse of the discretion vested in the trial court as would warrant this court to grant a new trial herein.

[10] Appellant's brief is permeated with aspersive matter not rising to the dignity of argument, but only tending to injure the writers thereof. Thus counsel repeatedly charge respondent's expert witness of being a party to a "frame-up" designed to mulct appellant in heavy damages. There is not the slightest basis in the record for any such claim. Officers of the court—and attorneys are such officers—should not stoop to such chicanery.

The judgment and order appealed from are affirmed.
McCOY, J., not sitting.