STATE, Respondent, v. CALDWELL, Appellant.

(235 N. W. 649.)

(File No. 7004. Opinion filed March 30, 1931.)

*Wallace E. Purdy*, of Brookings, and *Theodore R. Johnson*, of Sioux Falls, for Appellant.

*M. Q. Sharpe*, Attorney General, and *Frank W. Mitchell*, Assistant Attorney General, for the State.

MISER, C. Appellant was charged with the crime of assault with intent to commit robbery. The information filed set out that she did aid, assist, and abet one Nelson, one Martinson, and one Ryan in making such an assault. Her demurrer thereto having been properly overruled, she made a motion for continuance. This was based on the affidavit of Albert M. Freeman, Esq., who was a member of the state Legislature then in session. Section 2498, Rev. Code 1919, on which appellant relied for continuance, provides that whenever any action, in which any member of the Legislature is the attorney in charge for either party, comes on for trial during the session of the Legislature, the attendance of such attorney upon such session shall be cause for the postponement of such trial until after the conclusion of such session, "provided such party or attorney shall serve notice, on the opposite party, of his intention to apply for such postponement at least fifteen days before the term or time at which such action or proceeding may be brought on for trial or hearing."

Appellant was arrested on January 4, 1929, at Pipestone, Minn., and immediately taken to Brookings. At the preliminary examina-

tion on January 5th she was represented by Wallace E. Purdy, an experienced and able attorney of that city. He assisted her in securing the approval of the bail furnished. She then stated that her grandfather had a friend in Sioux Falls who was a lawyer whom she wanted to have take care of her case. Appellant had been unable to furnish bond until late in the evening of January 8, 1929. On January 9, she talked over the telephone to Mr. Freeman, then at Pierre. On January 14th Mr. Purdy received a letter from Mr. Freeman containing the motion for continuance and the affidavit of Freeman in support thereof. On her arraignment Mr. Purdy filed a demurrer to the information. This having been overruled, he filed a demurrer sent him by Freeman, which was also overruled. She then pleaded not guilty. Mr. Purdy then filed and presented the motion for continuance, Freeman's affidavit, and his own affidavit in support thereof as well as appellant's affidavit of prejudice against the judge then presiding. The Hon. W. N. Skinner, called in to try the case, denied the motion for continuance on January 29.

On January 30, Judge Skinner called the case for trial. Mr. Purdy stated that he did not appear for the defendant except for the purpose of presenting Mr. Freeman's application for continuance. The court formally denied the application for continuance. Appellant then stated in open court that she did not have counsel nor means of her own wherewith to employ counsel. At Mr. Purdy's suggestion she was given an opportunity to talk with Mr. Freeman. At 5:30 o'clock on the same day she was again before the court and stated that she desired to have the court appoint an attorney to defend her. The court thereupon appointed Mr. Purdy to defend her. On the following day, January 31, defendant, by her counsel, Mr. Purdy, made an application for postponement and the case was postponed until February 15, At this time Mr. Purdy announced that Mr. T. R. Johnson, of Sioux Falls, was associated with him in the defense. They then moved for a change of place of trial, which was denied. No person could reasonably expect a more able or vigorous defense of a criminal charge than appellant received from her counsel. If then the matter of postponement is to be ruled either directly or indirectly by section 2498, Rev. Code 1919, being part of the Code of Civil Procedure, appellant has not complied with its provisions requiring

the service of notice on the opposite party of her intention to apply for postponement, at least 15 days before the term. If, on the other hand, it is ruled by section 4836, Rev. Code 1919, which is part of the Code of Criminal Procedure, then appellant has shown no prejudice whatever from the denial of her application for continuance. And this without any disparagement of the ability of the able counsel whom she sought to have defend her, but who was already in attendance upon his legislative duties when she sought his services. To construe and apply section 2498, as appellant contends it should be construed and applied, could easily result in depriving our courts of criminal jurisdiction during the session of the Legislature. This section was designed to protect lawyers, public spirited enough to serve in the Legislature, from being penalized on that account, and was not designed to furnish another means of delay in the trial of those charged with crime.

If one needed further proof of the zeal and ability with which appellant's counsel represented their client, the perusal of the 106 assignments of error would satisfy the most doubtful. The overruling of the demurrer to the information, the denial of the motion for change of venue, already mentioned, were assigned as error, but we find no error therein. Nor was the disallowance of the challenge to the panel prejudicial error. Since this appeal was taken, this court has handed down opinions in State v. Karlen, 231 N. W. 915; State v. Smith, 232 N. W. 26; and State v. Hanley et al, 235 N. W. 516, which answer appellant's contentions on that point, although there is a difference in the facts.

An understanding of the remaining assignments of error requires a statement of the facts. We first state the facts as given by appellant on the witness stand: She, a Sioux Falls girl, 19 years old, with Dorothy Ryan, also of Sioux Falls, was in Brooking with two Brookings young men in their early twenties, named Martinson and Nelson. The girls wanted to go back to Sioux Falls, but had no money. The boys had no money with which to take them. Even if Martinson could get the car belonging to his folks, the four had no money with which to buy gas. They went into a cafe in search of some one who could help them to Sioux Falls. There appellant saw Henningson, whom she had seen once before in a Sioux Falls restaurant where she had worked. Appellant asked Henningson if he had a car to take her to Sioux Falls.

He said some one else was using his car. She asked him to loan her $2. He told her he would give it to her if she would walk down the street a ways. He left the restaurant. She followed him to a street corner where he handed her $2. This was about 6:30 or 7:00 p. m. She left Henningston and met Dorothy Ryan and Martinson, who had procured a car. She waited in the car with them for Nelson. While waiting, appellant told them that Henningson had given her $2. Martinson remarked that Henningson must have more money, because he always had a lot. Appellant paid no attention to Martinson's plans to get that money, because all she was thinking about was wanting to get home. They picked up Nelson, who had gone home to change his clothes. To him appellant gave the $2 to buy gas. Martinson suggested that they get Henningson's money. Nelson objected. Appellant said that they should not do anything like that; that she wanted to go home. When appellant was asked on the witness stand, "At the time that you left Henningson did you make any appointments or date to meet him again?" she replied: "I might have said something about it. He might have said something about it but I did not. I don't remember whether he did or not. I was not paying any attention to what he said at all." After the discussion between Martinson, Nelson, Dorothy Ryan, and appellant had lasted about an hour, and after appellant had refused to go to meet Henningson, or to have anything to do with it, Dorothy Ryan got out of the car to go to meet Henningson. Martinson drove the car with Nelson and appellant in it down to the park where Dorothy was to take Henningson. Then Martinson and Nelson got out and appellant drove the car a block south and stopped in an alley. She later said she did not drive the car, but that they parked the car in the alley and she stayed in the car. Then she testified that Martinson gave her orders to take the car and drive down the block and come back to the same place again. However, she had not gotten back to where she took charge of the car when the other three came running down the road, got into the car, and Martinson then drove the car to Sioux Falls.

The foregoing is from appellant's own testimony in her own defense. On cross-examination she testified that when Martinson and Nelson got out of the car near the park they did not tell her all their plans, but Dorothy Ryan was to take Henningson into the

park and they were to follow after him and get his money. She further testified: "I didn't hear everything they said sitting in the automobile. I didn't pay any attention." The state's attorney then asked: "This matter of robbing a man was an everyday occurrence to you?" The objection that this was misconduct of counsel was sustained. She testified that she was not interested in the talk between Martinson, Nelson, and Dorothy Ryan about "rolling" Henningson, although all four of them were sitting in a one seated car. She also testified that Dorothy Ryan had gone to meet Henningson because she did not want to go, but denied that the reason for her refusal was because Henningson knew her and would therefore be more apt to know who committed the offense. She also testified that she had been married twice; that she had gone from Sioux Falls to Brookings the night before the robbery with a man, but she could not remember his last name. She was then asked whether she had ever before been convicted of crime. She stated that she had not. The state's attorney then asked: "Are you sure of that?" This was objected to as misconduct, objection overruled, and exception allowed. She then admitted that on May 14, 1928, she had pleaded guilty in the municipal court of Sioux Falls to a charge of petit larceny, and on August 8, 1928, had pleaded guilty in the same court to the charge of aiding and assisting Annie Nelson to escape from an officer. She testified that she did not know that Dorothy Ryan was going to meet Henningson at the fairgrounds; that Dorothy just got out of the car and appellant did not watch to see where she went. Then she testified that she heard Martinson tell Dorothy to lure Henningson down to the fairgrounds; that she (appellant) protested very loudly and earnestly against it, saying: "You can't get by with it here." After the sustaining of an objection to the next question asked by the state's attorney, he asked her: "You did not say: 'You can't get by with it here?'" The objection being overruled, she answered: "Are you sure I said it "get by with it here'?" The state's attorney said: "I have it in my notes exactly that way." She then replied: "Maybe I did say that." She testified that Dorothy Ryan was to take Henningson down to the park and the two boys were to go down there and get his money, but she did not know if they were going to get it forcibly or whether they were just going to ask him for it; that after Dorothy left the car to go meet Henning-

son, Martinson drove the car to about a half block from the fairgrounds, the two boys got out. Appellant stayed there about five minutes with the engine running and then drove the car up the line and around the block once because Martinson had told her to do so.

The testimony of Dorothy Ryan, called as a witness for the state, did not differ essentially from the testimony of appellant up to the point where, after appellant had gotten the $2 from Henningson, the discussion took place in the car with all four present. Dorothy testified that appellant told them she had arranged to meet Henningson again behind a signboard, and suggested that the rest lay behind the wall and hi-jack him when he came. The boys got out of the car about half a block from the signboard and Dorothy drove the car away. After some delay the boys left the place and Dorothy picked them up. All four talked it over again and the boys wanted to quit and appellant then said: "If you two are not men enough, I will do it myself." Nelson then agreed to do it. Appellant then suggested that Dorothy meet Hennigson because he would not know her. Martinson objected to Dorothy substituting for appellant in keeping the appointment with Henningson. Appellant then called Dorothy "yellow," whereupon Dorothy got out of the car, met Henningson on the street corner, told him that her girl friend was sick and asked if she would be all right in her place. He said: "Alright." Dorothy then suggested that they would not stop at the signboard but go down to the fairground. They walked around the grand stand and she said that the road was pretty rough and asked him to carry her, and just then the boys slugged him with a grease gun. Nelson wielded the grease gun; Martinson tried to find Henningson's money without success; Dorothy went through one pocket and could not find any; then they got scared and ran, Martinson taking Dorothy's hand, and just as they were about out of the fairground Henningson started to follow them. At first they could not find defendant, who was to meet them with the car. After going about a half block from the entrance to the fairground, appellant drove up and picked them up, and they drove out of town.

On cross-examination Dorothy admitted that she had pleaded guilty and had been sentenced on January 4, 1929, to five years in the penitentiary for attempt to commit robbery. She was then asked eight questions, six of which were questions concerning

arrests. Objections were sustained to all of them; unquestionably properly sustained as to six of the eight. State v. Alfson, 50 S. D. 533, 210 N. W. 721; Richardson v. Gage, 28 S. D. 390, 133 N. W. 692, Ann. Cas. 1914B, 534. If it was error to sustain objections to the other two, which also tended to discredit the witness, it was without prejudice in view of the whole record. She testified that she was going to the fairground to have immoral relations with Henningson. She also testified that Martinson was her sweetheart, and that they were going into the bootlegging business with the money which they expected to take from Henningson.

Dorothy Ryan, Martinson, and Nelson, after pleading guilty and being sentenced to the penitentiary, had signed statements as to appellant's participation in the crime. The confessions were not admitted as exhibits. Dorothy Ryan's does not appear to have been substantially different from her testimony on the stand. Martinson's testimony was more favorable to appellant than his confession or statement had been. But even on the witness stand, where no hostility to appellant was apparent from the record, he testified that, when appellant came back to the car after borrowing the $2 from Henningson, she told Martinson and Dorothy that she was supposed to meet Henningson and get some more. They then picked up Nelson, and Martinson told him about Henningson having the money, and they decided to try to get it; that appellant did not say anything until Martinson asked her if Henningson had very much money. Then she said that she was not sure, but thought he had quite a bit. They were riding up and down main street when appellant said she was supposed to go over there and meet him again and get some more money. Then Martinson and Nelson decided to go over to the place where appellant was to meet Henningson and try to get his money. He was not there, and they decided that it was a poor place. Then they went back to the car and discussed further plans. Each girl refused at first to get Henningson to take the walk with her. When Martinson became angry Dorothy got out of the car without saying anything, walked up the street to where Henningson was waiting, and talked to him. The other three waited a little; then followed them in the car. Nelson and Martinson then got out of the car and followed Henningson. Nelson hit Henningson with the grease gun. Martinson felt in his pockets, Dorothy Ryan started to "holler," and then they left, got into the car, and went to Sioux Falls.

There are almost ninety assignments of error not hereinbefore discussed. The non-prejudicial character of many of them appears when examined in the light of the foregoing evidence. We have examined them all. To discuss them would extend an opinion already long. The learned trial judge may have admitted some evidence that should have been excluded and excluded some evidence that should have been admitted, but an examination of the entire record satisfies us that appellant received a fair trial without prejudicial error and was fairly convicted by a jury that was fairly instructed as to the law. This court may not do otherwise than affirm appellant's conviction.

The judgment and order appealed from are therefore affirmed.

MISER, C., sitting in lieu of ROBERTS, J., disqualified.
POLLEY, P. J., and CAMPBELL, J., concur.
WARREN, J., dissents.