ALLEN, Respondent v. McLAIN, Appellant

(69 N. W.2d 390)

(File No. 9430. Opinion filed March 24, 1955)
Rehearing denied May 20, 1955

**Lacey & Parliman,** Sioux Falls, for Plaintiff and Respondent.

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Defendant and Appellant.

LEEDOM, J. This matter has been before the court previously. It is an action by a guest passenger against the owner of an automobile for damages arising from personal injuries sustained when the automobile overturned. When the case was first tried the jury returned a verdict for the defendant. The trial court then granted plaintiff's motion for a new trial. The first appeal was by the defendant from

that order. We affirmed the order for a new trial. Our decision in that connection is reported in 74 S.D. 646, 58 N.W. 2d 232. Reference is made to the former decision for a comprehensive summarization of the facts.

On the second trial the jury returned a substantial verdict for the plaintiff and the defendant has now appealed from the judgment entered on the verdict and from the order of the trial court denying defendant's motion for a new trial.

■ In our first decision we held that the evidence, viewed in the light most favorable to plaintiff, was sufficient to show willful and wanton misconduct on the part of defendant as driver of the automobile at the time of the accident. Appellant, now conceding that the evidence on this point in the second trial is substatially the same as in the first trial, does not argue extensively that the evidence is insufficient to support a finding of willful and wanton misconduct on the part of appellant **if he was the driver** but again merely affirms the original position that such evidence does not actually sustain such finding. On this point we adhere to our former decision. Assuming that the defendant was driving the car at the time of the accident it is our view the evidence does sustain a finding of willful and wanton misconduct on his part.

Appellant's assignments of error in this appeal question the propriety of the instructions given by the judge to the jury and also the propriety of numerous rulings on admission and rejection of evidence. One of the issues in dispute in the second trial, as well as in the first, was whether appellant, the owner of the car, was driving at the time or whether he had relinquished the wheel to a third occupant, Charles Schanck. The position of appellant on the court's instructions was well stated by appellant's counsel in his final exception thereto, taken at the time of the trial. He said: "The defendant objects to the Court's proposed instructions in their entirety for the reason that, taken together, they allow the Jury; first, to assume that mere negligence as distinguished from willful and wanton misconduct, would be sufficient ground for a recovery by the plaintiff in this case. Second: that said instructions, taken together, allow the

jury to assume that no matter who was driving the car at the time of the accident, if some one, either Forrest McLain or Charles Schanck, was guilty of mere negligence or of willful and wanton misconduct, that the plaintiff would be entitled to recover against the defendant Forrest McLain."

We deal first with the contention that the trial court confused the jury and prejudiced appellant's case by injecting into the instructions numerous provisions concerning liability for mere negligence as distinguished from willful and wanton misconduct. It is our view that the instructions given by the trial judge deal much more extensively than they should with the law of liability based on mere negligence. As the trial of the case developed, if not at the inception of the litigation, it was clear that the plaintiff, respondent here, occupied the position of a guest in the automobile and that her right to recover would depend on ability to prove willful and wanton misconduct on the part of appellant. There could be no liability growing out of mere negligence as if there had been a jury question as to whether or not plaintiff was a guest. Admittedly the instructions in several places contain language that deals with liability growing out of ordinary negligence. Appellant contends this language led the jury to believe that ordinary negligence would render appellant liable without a finding of willful and wanton misconduct.

■ ■ In this connection appellant relies most heavily on two recent Colorado cases, Pettingell v. Moede, Colo., 271 P. 2d 1038, and Lewis v. Oliver, Colo., 271 P.2d 1055. Whether any one instruction is prejudicial must be determined by a consideration of all the instructions in their entirety. It is difficult to make an exact comparison of any given instruction in one case with a similar instruction in another case because of the influence of all of the other instructions in each of the two cases on the minds of the jury. We believe however it is fair to say, judging from the language of the Colorado Court in the two cases above cited, that if the instructions in this case were before the Colorado Court they would likely hold the repeated reference to liability arising from ordinary negligence to be prejudicial error. We however do not reach this conclusion. Notwith-

standing the distinctions between negligence and wanton and willful misconduct the latter is necessarily a departure from approved conduct and has this characteristic in common with negligence. Thus conduct that culminates as willful and wanton may be negligence in its inception. There is therefore a tendency, and in some instances a necessity, to deal with negligence in instructing a jury in a guest case. Great care should be taken however to make clear that liability could not be predicated on acts of negligence alone, and emphasis should be placed on the essential elements of willful and wanton misconduct. While we find the language appearing in these instructions highly objectionable in this respect we believe they did not confuse the jury on the point that liability depended on willful and wanton misconduct. The instructions set out SDC 44.0362, the "guest" statute, and in several instances clearly and expressly advise the jury that liability could not be established against appellant unless he be found guilty of willful and wanton misconduct. The instructions also define willful and wanton misconduct in language predicated substantially upon language of this court. While appellant is critical of such definition in numerous respects we find no fatal departure from the law as laid down by the decisions in this jurisdiction. We conclude these instructions did not result in reversible error.

The court instructed in effect that it made no difference whether Schanck or appellant was driving if the jury found the driver guilty of willful and wanton misconduct, inasmuch as Schanck's conduct under the circumstances would be imputed to appellant, the owner of the car. Appellant objects on two grounds (1) that there was nothing in the record to show Schanck guilty of wanton and willful misconduct and (2) it was error to charge as a matter of law that appellant should be charged with Schanck's willful misconduct. Very able counsel for appellant cite no authority on this point and rest on argument alone. They say in the brief:

"Let us assume for the moment that from Lake Preston to a point south of Dell Rapids' Forrest McLain drove the car exactly as Alda Mae claimed he did; that at times he drove at speeds up to 95

and 100 miles per hour; that Alda Mae repeatedly asked him to slow down, but that he ignored her requests and kept going faster and faster. Then let us assume that McLain did stop at Renner Corner at Alda Mae's request, and that from Renner Corner on Charles Schanck took over the driving of the car, as McLain testified, * * *''.

The support of the latter proposition, that Schanck took over the driving, comes only from testimony of appellant and his witnesses. It also is in direct conflict with respondent's testimony. Appellant's position here on this phase of the case rests on the validity of his assumption that the jury believed Schanck was driving. If the jury found that appellant was driving, submitting the question of Schanck's willful and wanton misconduct and imputing such conduct to appellant, even though erroneous, would be harmless error because such matters would then be completely outside the jury's consideration.

If there is validity to the proposition that the jury found Schanck to be the driver it must be assumed that they believed a part of respondent's testimony, the part that brought the parties as far as Renner Corner, otherwise there would be no basis whatever for the verdict in her favor. It would then be necessary for the jury to disbelieve respondent's recital of events from Renner Corner on to the scene of the accident. In like manner they would have to believe part and disbelieve part of appellant's testimony. The dispute in the testimony of these two litigants was sharp and wide. It would be wholly unrealistic to assume the jury did other than accept one story or the other essentially in toto. There is no rational basis for reconciling the conflict by accepting part of one story and another part of the other story on the basis of mere mistake or different shades of meaning. Belief in part of one version would quite necessarily brand false all material parts of the other version. Since the verdict is general and in respondent's favor, supported as we have indicated by the evidence if appellant was the driver, the only reasonable conclusion is that the jury accepted respondent's testimony as true and believed appellant was the driver.

■ ■    There are still other circumstances disclosed by the record which support the conclusion that the jury found appellant, rather than Schanck, to be the driver.  As stated, appellant claims there is no evidence that Schanck, if driving, was guilty of willful and wanton misconduct.  With this we agree.  Respondent neither alleged nor sought to prove that Schanck was the driver or that he was willful and wanton.  The contention that Schanck drove was a matter of defense injected in the case by appellant.  But appellant of course had no purpose in proving Schanck guilty of willful and wanton misconduct; and so the record is devoid of all proof of certain essential elements of such misconduct on Schanck's part.  There is no evidence whatever as to how he was driving at the exact time the car left the highway; no evidence what he then did or did not do, nor proof of any other circumstance from which inferences can be drawn to establish the "mens rea" or consciousness, measured by any standard, of the probability as distinguished from possibility that he was about to harm the plaintiff.  Such proof is essential to a finding of willful and wanton misconduct. Therefore, it may be said, it is undisputed that there is no evidence whatever of the essential elements of willful and wanton misconduct on Schanck's part.  The court did clearly instruct the jury that before it could find the defendant liable it would have to find the driver, whether appellant or Schanck, guilty of willful and wanton misconduct.  Thus admonished, with no evidence of Schanck's willful and wanton misconduct, the jury brought in a verdict of liability. Assuming that the issue should not have been submitted as to whether Schanck was willful and wanton, and that it was error to impute to appellant Schanck's misconduct if found to exist, all the circumstances herein discussed indicate that such error was harmless.

■    In determining whether error was probably harmless or probably prejudicial an appellate court is guided by all the factors in the case bearing on the likelihood of prejudice, the force of the evidence to sustain the verdict, the assumptions that the jury was intelligent, and where the verdict is sustainable on more than one theory, that the verdict is based on the theory unaffected by error where noth-

ing in the case suggests the contrary. 5 C.J.S., Appeal and Error, § 1677. These principles applied to this record reject the contention that this jury found Schanck to be the driver at the time of the accident. In State v. Van Horne, 71 N.D. 455, 2 N.W.2d 1, at page 4, numerous cases are cited to support this statement:

"And where an appellant in a civil action asks that a verdict of a jury be set aside because of certain instructions alleged to be erroneous, he must establish affirmatively by the record presented to the appellate court that under the evidence in the case the jury might and probably would have returned a different verdict if the erroneous instructions had not been given."

Also see Mundon v. Greenameyer, 44 S.D. 440, 184 N.W. 257. In Stammerjohan v. Sims, 72 S.D. 189, 31 N.W.2d 449, 451, the court said:

"The giving of an inapt instruction is not ground for reversal, where it is manifest from the undisputed facts that it could not have prejudiced the party appealing."

Dealing with instructions not supported by the evidence it is stated in Thompson on Trials (Early), § 2315:

"The rule is that if it cannot fairly be inferred that the jury were misled by such instructions to the prejudice of the party complaining, the error of giving them will be overlooked. Thus, if instructions are not based upon facts which the evidence tends to prove, and are also, when examined by the appellate court, found to have a tendency to mislead, the judgment will be reversed, because they were given, although they are correct as abstract propositions of law. It is often loosely said that the giving of an instruction not warranted by the evidence is a ground of reversal, since it cannot be known but that the jury have been thereby led to base their conclusion upon conceptions of fact of which there was no evidence. But this must be understood to be in subordination to the principle above stated; whether it will be ground of reversal

or not, will depend upon the nature of the supposed facts—whether they are of a nature to be prejudicial to the party complaining."

In Valente v. Porto, 98 Conn. 653, 119 A. 888, 889, it is written:

"The verdict is a general one. We cannot tell upon which counts the verdict was predicated; hence we cannot tell whether the error of the court harmed the defendant. The causes of action under the first three counts were supported by credible testimony; therefore the verdict must stand, even though the cause of action under the fourth count was not authorized by law, since we cannot know that the verdict was based upon the cause of action under the fourth count. 'In such cases the defendant may protect itself from any possible injustice * * * when two or more issues are presented in one count, by asking the court to propound special interrogatories to the jury.' "

The following black-letter summary appears in 5 C.J.S., Appeal and Error, § 1562 (g), p. 397:

"As between proper and improper grounds or theories, a general verdict will often be presumed to be based on that ground or theory on which it can properly be sustained."

■ From this record it becomes apparent that there was no likelihood the jury believed Schanck to be the driver of the car at the time of the accident. They had been instructed to find the defendant liable only if the driver was willful and wanton. They are deemed to be reasonably intelligent. There was no evidence of such conduct by Schanck. That he drove at all was in direct conflict with the positive testimony of respondent whose version of the facts was necessarily given credit as evidenced by the general verdict in her favor. There is room for but one conclusion, the jury was not misled. Therefore in the light of these authorities the error in submitting the unsupported fact proposition of Schanck's willfulness and wantonness was harmless rather than prejudicial. It follows then that the jury verdict rests

on the theory that appellant, not Schanck, was the driver. Thus the instruction imputing to appellant Schanck's misconduct as driver, when the jury could not have found him to be driving, becomes irrelevant, completely outside the consideration of the jury and therefore likewise harmless error, assuming it to be erroneous. Appellant, having failed to show prejudice from the claimed error, is not entitled to a reversal.

Appellant contends further the court's instructions on contributory negligence and the assumption of risk were improper. It is our view however that the instructions adequately presented the law to the jury on these two subjects.

■ The doctor who attended respondent in the hospital on the night of the accident was permitted to testify that as he worked over her she repeated several times in substance this sentence, "Slow down, please slow down". Appellant claims this evidence was inadmissible and is prejudicial for the reason that it is incompetent, hearsay and made when the patient was unconscious and in a state of deep shock. Actually the record indicates that at the time the statement was made respondent had begun to recover somewhat from her deep shock and unconsciousness. We think this evidence was admissible as a spontaneous exclamation. 20 Am.Jur. Evidence, § 678. See also Johnson v. Southern Railroad Co., 351 Mo. 1110, 175 S.W.2d 802. In Hjermstad v. Petroleum Carriers, Inc., 74 S.D. 406, 53 N.W.2d 839, we quoted with approval from Wigmore on Evidence, 3rd Ed., § 1747, language indicating that one of the factors rendering such an exclamation competent evidence is that it is made "under certain external circumstances of physical shock" and "under the immediate and uncontrolled domination of the senses". As was said in Johnson v. Southern Railroad Co., supra, there should be no question as to the competency of such a statement on account of an alleged unconscious state of the declarant unless the language is incoherent and the speaker delirious. It is our view that the declaration involved was competent and clearly had probative value.

■ Respondent's counsel was permitted to cross-examine appellant concerning his commission of petit lar-

ceny. Proof of conviction of crime is relevant in connection with a witness' veracity. Richardson v. Gage, 28 S.D. 390, 133 N.W. 692; State v. Bechtold, 48 S.D. 219, 203 N.W. 511; State v. Caldwell, 58 S.D. 246, 235 N.W. 649. Appellant concedes this general rule and questions the application of the rule to a crime such as petit larceny; but actually the gist of his objection is that the offenses involved were too remote to be admissible and cites Moberg v. Scott, 42 S.D. 372, 175 N.W. 559. There the court held that the crimes involved were not too remote to be admissible. While it may be conceded that a criminal offense could antedate a trial so long that evidence of the offense would have no bearing on the witness' veracity, that question is one that is left to the sound discretion of the trial court and unless his ruling is clearly wrong an appellate court should not disturb it. Moberg v. Scott, supra. We think this appellant's latest commission of the offense in 1947 was close enough to the trial to render it admissible and it being a repetition lent relevancy and therefore competency to the earlier offense as evidence of appellant's credibility.

The trial court admitted over objection evidence of three previous accidents appellant had between 1941 and 1948 in which he either ran his car into the ditch or upset it. Under the broad sub-title "Evidence to Prove a Human Quality or Condition", Wigmore on Evidence, 3rd Ed., beginning with § 300 deals with the topic "Other Offenses or Similiar Acts, as Evidence of Knowledge, Design or Intent". The theory of evidencing knowledge is treated in § 301 and of evidencing intent in § 302. Defining the proper "scope of evidence of other similar acts to show Knowledge" in criminal cases Wigmore states this to be the thought process: "The other act will probably have resulted in some sort of warning or knowledge; this warning or knowledge must probably have led to the knowledge in question" [p. 194]. Illustrating a proper application of the principle the author quotes from Cresswell, J., in an old case: "One step in the proof would be to show that he [defendant] would be likely to know that a certain result would follow; and if it can be proved out of his own mouth that he was aware that such a result would be produced, it is one ingredient in the

necessary proof that he contemplated it" [p. 195]. On the same page a quotation from Learned Hand indicates a limitation on the rule: "The judge must decide each time whether the other instance or instances form a basis for sound inference as to the guilty knowledge of the accused in the transaction under inquiry; that is all that can be said about the matter."

In many succeeding sections of Wigmore, through to § 371, the principle is applied to many specific crimes. In § 371 it is stated that these principles apply equally to civil cases where knowledge or intent is at issue. From this authority it appears that where, as here, it is incumbent on a plaintiff to show knowledge of the probable result of a wrongful act it is permissible in a civil case for a plaintiff to show prior similar acts performed by the defendant from which he actually gained knowledge that he denies he has. Specifically applying the principle to the peculiar circumstances of this case, appellant denied knowledge that driving at a very fast rate around curves and over sharp hills was dangerous. A necessary ingredient of respondent's case was proof that appellant "consciously realized that his conduct would in all probability * * * produce the precise result which it did produce and would bring harm to the plaintiff." Melby v. Anderson, 64 S.D. 249, 266 N.W. 135, 137. It is our conclusion that under this record the admission by appellant on cross-exemaination of his previous accidents did not constitute error. This kind of evidence should be admitted very cautiously to avoid both unfair surprise and undue prejudice and only under restricted circumstances. A defendant should not be confronted with the necessity of meeting with proof charges of negligence on innumerable collateral acts. Neither should previous similar acts be presented in such manner that they weigh unduly against a defendant in the jury's determination that his act, under consideration, was wrongful. Under a rule almost universally recognized prior acts are inadmissible for this purpose. These precautions, however, must be taken in all cases where prior acts, or reputation for negligence, are admissible to show knowledge. It is our view that appellant suffered no unfair disadvantage by the questions as to his

previous accidents, that the main issue was not thus obscured and that appellant's case was not unfairly prejudiced by admitting his answers on cross-examination to show his knowledge of the probable results of his alleged driving on the occasion under inquiry.

We have carefully considered other assignments and are of the view that none involves prejudicial error.

The judgment from which the appeal is taken is affirmed.

RUDOLPH, P. J., and ROBERTS and SMITH, JJ., concur.

SICKEL, J. (dissenting). As I understand the decision in Antonen v. Swanson, 74 S.D. 1, 48 N.W.2d 161, 165, 28 A.L.R.2d 1, it was error for the court to instruct the jury in this case on ordinary negligence.

Plaintiffs' complaint alleges that defendant McLain was the driver of the car and that his willful and wanton misconduct was the cause of her injuries. It is undisputed that the plaintiff was a guest.

Defendant claims, and introduced evidence to prove, that he was not the driver of the car but that the car was being driven at the time of the accident by Schanck, who was also a guest in the car. This evidence constituted in part the defense of McLain to the cause of action stated in plaintiff's complaint.

In view of this situation the court gave the following instruction (S.R. 741): "You are instructed that if defendant's contention is true, Schanck became the agent or gratuitous employee of the defendant Forrest McLain and his acts are binding upon the defendant McLain with the same force and effect as if the acts had been committed by McLain himself, and it would make no difference who drove the car if the driver was guilty of willful and wanton misconduct as I have herein defined those terms to you."

In the absence of a guest statute, a person operating or responsible for the operation of an automobile must use reasonable care for the safety of the guest. 60 C.J.S., Motor Vehicles, § 399(1).

Under guest statutes owners and operators are both relieved of their common law liability to guests for ordinary negligence, and the liability is limited to willful and wanton misconduct. Id., 60 C.J.S., Motor Vehicles, § 399(3).

The liability of the owner of an automobile for injuries resulting from negligent operation of his car by another with his permission, **independently of the relationship of master and servant** between the owner and the operator, can exist only by virtue of an express statute. Weber v. Pinyan, 9 Cal.2d 226, 70 P.2d 183, 185, 112 A.L.R. 407.

A statute creating such liability was considered in connection with a guest statute by the Supreme Court of California in the case referred to above. There plaintiffs were husband and wife suing for injuries received by the wife as a result of reckless driving by defendant Pinyan. Bird, owner of the car, was also a defendant. Negligence and willful misconduct of the driver were alleged. The owner demurred to the complaint. The demurrer was sustained and plaintiffs appealed. The question was: "Whether the owner of an automobile, who allows it to be driven by another, is liable for injury to a guest due to the intoxication and willful misconduct" of the driver. The opinion quotes an express statute of California on imputed negligence and also the guest statute. The court said the former was enacted "* * * to place upon the owner of a motor vehicle liability for injuries in its operation by another with his permission, express or implied, and thus hold the owner answerable for his failure to place the instrumentality in proper hands; the guest law was enacted to protect the owner against fraudulent claims of those riding as guests who, in many cases, were the only witnesses to the accident. Since the imputed negligence statute created a new right of action, giving a remedy against a party who would not otherwise be liable, it must be strictly construed."

After a lengthy discussion of the distinction between negligence and willful misconduct, the court concluded that under the responsibility Act: "* * * in absence of some other relation such as that of master and servant or principal and agent, the owner of a vehicle who permits another

to operate it is liable for injuries arising from the latters' 'negligence' as that term is defined herein, but that he is not liable for injuries arising from the driver's willful misconduct or intoxication. · We also conclude that liability under section 141¾ of the Vehicle Act was limited to acts of the owner or driver arising from the intoxication or willful misconduct by the owner or driver as the case may be, and that the owner who merely permits another to drive his car, and where no other relation exists, is not liable under either statute for injuries to a guest arising from the intoxication or willful misconduct of the driver."

The instruction quoted above is in the alternative. It instructs the jury that if they find that defendant was driving the car and that plaintiff's injury was due to his willful and wanton misconduct the plaintiff may recover. On the other hand the jury is also instructed in effect that if the jury should find that defendant was not driving the car but that it was being driven by Schanck, and if the injuries to plaintiff were caused by the willful and wanton misconduct of Schanck, defendant is liable. Since our statutes do not impose upon defendant responsibiltiy for willful and wanton misconduct of Schanck, the above instruction was erroneous and in my opinion the judgment should be reversed.