STATE, Respondent v. JOHNSON, Appellant

(139 N.W.2d 232)

(File No. 10153. Opinion filed December ,31, 1965)

**Roubideaux, Poches & Reade,** Fort Pierre, for defendant and appellant.

**Frank L. Farrar,** Atty. Gen., **Walter Weygint,** Asst. Atty. Gen., Pierre, **Robert L. Varilek,** Deputy State's Atty., Pennington County, South Dakota, Rapid City, for plaintiff and respondent.

RENTTO, J. The lifeless body of William Sykes, an Australian who was visiting in the area, was discovered on a graveled road just north of the Interstate Highway near where it junctures with the West Boulevard Interchange serving Rapid City, South Dakota, about 6:30 a. m. on May 21, 1963. An information was filed naming the defendant, then residing at Sturgis, South Dakota, as being responsible for this death. Count I charged him with premeditated murder by strangulation, and Count II with unpremeditated murder in the commission of a robbery. He pled not guilty and not guilty by reason of insanity. The jury found him guilty of manslaughter in the first degree. He was sentenced to imprisonment for life. From that judgment he appeals.

Randy McIntosh, defendant's 15-year-old companion on the occasion involved, testified for the prosecution. He related how he and the defendant, in defendant's car, drove to Rapid City from Sturgis that night and met the decedent in the bus depot. He told of their driving with him from the depot to East Boulevard Park at which place defendant engaged in a fatal scuffle with the decedent in the car. After that they drove to the westbound section of the Interstate Highway where the car ran out of gas. When this happened they took the body from the car and put

it in the place where it was found by others, several hours later. Then they drove the car some distance further west on the highway by utilizing its battery power until it stopped.

Defendant's testimony was that he blacked out about the time they were leaving Sturgis that night and knew nothing as to what took place until his companion aroused him on discovering that they were out of gas. Consistent with this he admitted on cross-examination that he didn't know whether he committed the homicide or not and claimed only that he didn't see how he possibly could have. He does not question the sufficiency of the evidence to sustain the verdict, but does urge several trial rulings as error requiring a reversal of the judgment.

 On cross-examination the defendant, over objections, was interrogated concerning two prior occasions when he had had trouble with the law. His objections were overruled and a motion for mistrial based thereon was denied. His claim is that these questions were not proper and their effect prejudicial. The following is the record leading up to the first of these:

"Q Now, if I understand your testimony on direct examination, basically, it's this: You don't know whether or not you committed this crime, but you don't think you are the type of person that could commit it; is that correct? A That's right.

"Q And that's because you are a peaceful, law-abiding citizen; is that correct? A That's right.

"Q And you have never been in any trouble with the law before this; have you?

"BY MR. ROUBIDEAUX: We will object to counsel's question, Your Honor. Whether or not he may have or may not have been in trouble with the law is immaterial.

"BY THE COURT: Overruled.

"A Yes, I have.

"Q Yah. A couple of times, at least? A Yes.

"Q One time, in fact, it was for petit larceny; wasn't it, sir?—stealing something? A No, it wasn't.

"Q It was not for petit larceny? A It wasn't for stealing.

"Q Oh. You pled guilty to petit larceny, though; didn't you? A Yes."

In City of Sioux Falls v. Johnson, 78 S.D. 272, 100 N.W.2d 750, we said: "In its discretion, a trial court may allow considerable latitude in the cross-examination of the accused. * * * Cross-examination may be as broad and as searching as the foundation of direct examination or of voluntary statement upon which it rests." In permitting this question to be asked the trial court in our view did not abuse its discretion. The matter inquired about tends to contradict the defendant's claim that he was a law-abiding citizen. The purpose of cross-examination is to test the truth of the direct examination. State v. Egan, 44 S.D. 273, 183 N.W. 652.

The second question complained of is presented in this portion of the record:

"Q Now, these blackout spells of yours—As a matter of fact, don't you have one every time you do something that you are ashamed of, or that you are trying to hide? A No.

"Q Was there a time in about March of 1956, when you were in Deadwood, South Dakota? A I don't remember if I was there in '56 or—in March of '56, or not.

"Q Well, if I told you that you were in jail at the time, would you recall it then?

"BY MR. ROUBIDEAUX: Your Honor, we're going to object to this type of cross-examination. Any reference to whether this witness was or was not in jail is irrelevant and immaterial and prejudicial.

"BY THE COURT: Overruled.

"A Yes, I believe it was in—was in March."

In view of the defensive claim made by the defendant we do not feel that the trial court abused its discretion in permitting ·this interrogation. But even if we were to hold it improper we would be unable to say that it was prejudicial when considered in the light of the whole record. Manifestly, these questions are not the needless and intentional injection of prejudice which we condemned in City of Sioux Falls v. Johnson, supra.

We think it proper to point out that in both instances the objections were general in nature and neither one made the claim that the question propounded constituted improper cross-examination. State v. La Croix, 8 S.D. 369, 66 N.W. 944; State v. Egan, supra; State v. Williams, 47 S.D. 68, 196 N.W. 291. Consequently, it is doubtful that either objection was sufficient to require consideration by the trial court or presents the propriety of the court's ruling thereon for review.

The next error urged by defendant concerns Randy Mc-Intosh's involvement in the death of Sykes. As to this feature we have only the testimony of Randy. It is that he and the defendant went to the bus depot and he saw Sykes, whom neither of them apparently had ever seen or heard of before, sitting there on a bench. Later the defendant and Sykes were in the restroom from which they came out together. They walked toward defendant's car and Randy followed them. Defendant then invited Sykes to go for a ride with them. Since the door on the passenger side was hard to open they all entered from the driver's side with defendant getting in first, Sykes next and then Randy.

Defendant started the car and told Randy to drive and directed him as to the route to follow, which took them to East ¡Boulevard Park where they stopped the car with all of them remaining in it in the same positions. Defendant carried on a conversation with the deceased after which these two became engaged in a scuffle in which the defendant was the aggressor. During the scuffle Randy heard the defendant ask Sykes about his billfold. In the course of the scuffle Sykes' feet struck Randy and to protect himself from them Randy pushed them away,

apparently several times. Soon Sykes' legs just slid down and went limp and he didn't move anymore or make any sounds.

The defendant then started the car and directed Randy to drive out of the park to the Interstate Highway where it stopped because they were out of gas. At that point defendant told Randy to get out of the car and open the door on his side and this Randy did after which the defendant got out of the car dragging Sykes' body. He asked Randy to help him so Randy took hold of an arm and a leg and they took the body to the right-of-way fence on the north side of the highway. There they put the head of the body on the top wire and gave the body a push causing it to slide down the other side.

They then went back to the car with the defendant taking the driver's side and Randy the passenger's seat. In the car they found a shoe, which Randy, at the defendant's direction, threw out. Then they drove the car west on the highway a short distance on the battery. After it stopped Randy went to get some gas, but when he returned with it the defendant was gone so he poured the gas into the tank of the car and hitch-hiked a ride to Sturgis, arriving there at about 5 a. m. Defendant took the position that Randy was an accomplice as a matter of law and requested an instruction to that effect which was refused.

An accomplice is one who is liable to prosecution for the identical offense charged against the defendant on trial. To render one an accomplice he must in some manner knowingly and with criminal intent participate, associate or concur with another in the commission of a crime. State v. Shields, 81 S.D. 184, 132 N.W.2d 384. However, something more than mere presence at the time and place where the crime is committed is required in order to make one an accomplice, and it makes no difference that the one present remained silent or even acquiesced in the commission of the offense, if he is under no legal duty to act for the prevention of the crime. 23 C.J.S. Criminal Law § 786(2). If a person after the commission of a felony, conceals or aids the offender with knowledge that he has committed a felony and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, he is an accessory, SDC

13.0203, but not an accomplice. State v. Phillips, 18 S.D. 1, 98 N.W. 171, 5 Ann.Cas. 760.

■ ■ Whether one is an accomplice may be a question of law for the court or one of fact for the jury depending on the state of the evidence. On this record we think it clear that the court was not required to hold that Randy McIntosh was an accomplice as a matter of law. While the facts concerning this issue are not in dispute they are susceptible of differing inferences. In that situation the question of whether the witness is an accomplice is one for the jury. 23 C.J.S. Criminal Law § 797. The court properly submitted this matter to the jury and instructed as to the need for corroboration of his testimony if they found him to be an accomplice, as provided in SDC 1960 Supp. 34.3636.

■ Defendant requested an instruction to the effect that when one who commits an act is not conscious thereof, such act is not criminal even though if committed by a person who was conscious, it would be a crime. This was properly refused. The requested instruction set forth the limited situations in which the claimed rule applies and this record does not show the existence of any of these. On its own motion the court did give an instruction on the legal significance of amnesia in the circumstances of this case, if it found that defendant was in that condition during the period in question.

■ On the theory that Randy McIntosh was induced to testify by a promise of immunity, defendant requested an instruction that this must be considered by the jury in determining his credibility. This was refused and we think properly because there is no evidence in the record of any grant or promise of immunity, or evidence of any other fact upon which such an instruction could properly be based. As a matter of fact proceedings were then pending against him as a juvenile offender in the County Court of Pennington County. SDC 43.0318 as amended by Ch. 214, Laws of 1961; and SDC 43.0313. In a general instruction on credibility, the jurors were advised to take into consideration, among other things, the interest of a

witness in the result of the trial and the motives actuating him in testifying.

The court refused to instruct the jury as to excusable or justifiable homicide as defined in SDC 13.2002(2) and 13.2003. This is assigned as error. In our opinion this is without merit because there is no evidence in the case tending in any manner to prove excusable or justifiable homicide. Courts are not required to instruct as to matters that find no support in the evidence. Manslaughter in the first degree of which defendant was convicted is defined in SDC 13.2013(2) as follows:

"When perpetrated without a design to effect death and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide;"

Proceeding from this definition as a premise the defendant argues that the absence of excusable or justifiable homicide are essential ingredients of the crime of manslaughter in the first degree and for that reason the jury should have been advised thereof. In this he is in error. They are matters of defense and the absence thereof is not a portion of the description of the offense. State v. Stumbaugh, 28 S.D. 50, 132 N.W. 666. See also SDC 1960 Supp. 34.3642.

Lastly, it is claimed that the sentence imposed is excessive and we are asked to modify it. This we must decline to do. In SDC 13.2015 the legislature provided that a person guilty of manslaughter in the first degree is punishable by imprisonment in the State Penitentiary for not less than four years. The sentence here imposed does not offend that limitation. It is well established in this state that when the sentence under attack is within the statutory limits the discretion exercised by the trial court in fixing it is not reviewable in this court. State v. Bjelkstrom, 20 S.D. 1, 104 N.W. 481; State v. McFall, 75 S.D. 630, 71 N.W.2d 299.

One other matter occurring in the trial deserves to be noted. Just before commencement of the trial proceedings the judge met in chambers with the defendant, his counsel and

counsel for the state, and furnished counsel for both parties with copies of pretrial instructions which he proposed to read to the entire jury panel prior to the commencement of the voir dire examination. Both parties there stated they had no objection to the proposed reading of them. The nature and purpose of these pretrial instructions are revealed by this portion of the introduction:

"In order to assist you in answering other questions that you may be asked on your examination as prospective jurors, concerning matters relating to this particular case, counsel and the defendant have consented that I read to you certain of the anticipated instructions concerning the issues and the law of this case. Inasmuch as this is being done in advance of the actual trial of the case, these instructions, of necessity, are prospective in nature. They are the ones which we anticipate will be given, based upon the issues raised by the pleadings in this case. The nature of the evidence that is produced during the trial may necessitate the elimination or revision of some of these, and there will be additional instructions given at the close of the case. However, the ones that I am about to read at this time will give you some insight into the issues and law of the case and will enable you to better understand what the case involves, as you are examined as prospective jurors."

Our law prescribes that the court is to charge the jury as to the issues and the law of the case after both sides have completed their presentation of evidence. SDC 1960 Supp. 34.3627. It is only then that the court is in position to determine what issues find support in the evidence. Illustrative of this is the fact that in this case the pretrial instructions defined excusable and justifiable homicide which items the court declined to include in the trial instructions. The practice here indulged is unauthorized and improper.

Since the record under review discloses no reversible error, the judgment is affirmed.

All the Judges concur.