**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Eugene RUFENER, Defendant and Appellant.**

**No. 15039.**

Supreme Court of South Dakota.

Considered on Briefs March 17, 1986.

Decided Aug. 13, 1986.

Rehearing Granted Sept. 30, 1986.

Mark A. Moreno, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Thomas K. Wilka of Hagen & Wilka Sioux Falls, for defendant and appellant.

FOSHEIM, Chief Justice.

Eugene Rufener (Rufener) was found guilty on three counts of distributing marijuana. Each count alleged distribution of more than one pound in violation of SDCL 22–42–7. Concurrent six year sentences on each count were imposed. Rufener appeals. We affirm.

Roger Persing was arrested on October 30, 1984, after an undercover agent purchased marijuana from him. Persing entered into a plea agreement which required his cooperation with law enforcement personnel to identify his drug source. Persing testified about purchases he made from Rufener in mid and late October of 1984, prior to his arrest. Rufener was later arrested in late November after he scheduled another meeting with Persing.

■ Rufener argues that the trial court erred in refusing requested accomplice instructions regarding the testimony of Persing. The first proposed instruction stated in substance that conviction of a crime charged cannot be based upon the testimony of an accomplice absent independent corroboration. The second instruction offered stated that accomplice testimony should be viewed with distrust.

It appears the trial court relied on *State v. Johnson*, 81 S.D. 600, 606, 139 N.W.2d 232, 236 (S.D.1965), which defines an accomplice as one who is liable to prosecution on the identical offense charged against the defendant. Since Persing was no more than a purchaser at the time of the alleged criminal acts, the trial court did not err in finding that Persing and Rufener could not be charged with the same crime arising from each transaction. *See State v. Fox*, 313 N.W.2d 38, 40–41 (S.D.1981). Hence, Persing was not an accomplice and no corroboration was necessary to sustain the conviction. *Id.* at 41. Furthermore, other witnesses corroborated Persing's "time and place" testimony far beyond what we have held meets minimum requirements. *See State v. Reutter*, 374 N.W.2d 617, 626 (S.D. 1985); *State v. Wiegers*, 373 N.W.2d 1, 15–16 (S.D.1985); *State v. Feyereisen*, 345 N.W.2d 58, 60 (S.D.1984).

Rufener seeks reversal because he claims several specific instances of "bad acts" evidence were received contrary to SDCL 19–12–4 and –5. Specifically, this evidence included: (1) testimony by David Dietrich that he purchased several pounds of marijuana from Rufener in the summer of 1984; (2) testimony by the arresting officers that they retrieved an illegally concealed pistol, a small bag of marijuana, and a marijuana cigarette from Rufener's car; and, (3) impeaching testimony by undercover agent Duane Dahl that Nancy Pierson, Rufener's girlfriend and a State's witness, told Dahl in April of 1983 that Rufener was bringing hundreds of pounds of marijuana to the state from Arizona.

■ Upon review of whether the trial court abused its discretion in admitting evidence of other wrongs we must be careful not to substitute our reasoning for that of the trial court. The test is not whether judges of this court would have made an original like ruling, but whether they believe a judicial mind, in view of the law and the circumstances, could have reasonably reached that conclusion. *State v. Rose*, 324 N.W.2d 894, 895–96 (S.D.1982).

■ Rufener claims Dietrich's testimony about his purchases should not have been admitted because it did not demonstrate a common scheme, method or plan, but rather was nothing more than another in a series of marijuana related transactions that took place in a motel. It is Rufener's position that facts such as the customary use of a dufflebag or suitcase by Rufener and meeting in a motel alone are not evidence of a common scheme, method or plan as would lead to the identification or establishment of a common scheme. He contends, citing SDCL 19–12–4 and *State v. Houghton*, 272 N.W.2d 788 (S.D.1978), that this type of evidence must show a plan to commit the specific crime charged, not merely a plan to commit that type of crime generally.

The trial court concluded that Dietrich's testimony was relevant under SDCL 19–12–5 and properly balanced the probative value of the proffered evidence against the risk of unfair prejudice pursuant to SDCL 19–12–3. *State v. Johnson*, 316 N.W.2d 652, 653–55 (S.D.1982); *State v. Dace*, 333 N.W.2d 812, 816 (S.D.1983). The jury was then specifically instructed that "other acts" evidence was admissible solely for the limited purposes of showing that Rufener had a common scheme, design, system or plan to commit the sort of crime with which he was charged, and to identify Rufener as the person who committed the offenses charged. Dietrich clearly testified on "common elements" showing that Rufener customarily sold marijuana at motels, that the marijuana was usually wrapped in individual one pound bags and carried in a dufflebag or suitcase, and that Rufener had previously extended credit. Accordingly, we are unable to find that the trial court abused its discretion in admitting this evidence, especially since Rufener placed identity in issue by asserting alibi defenses to all three counts. *See Johnson*, 316 N.W.2d at 654.

■ Rufener argues that evidence of the marijuana and firearm found in his rented car at the time of arrest was also improperly admitted because of an absence of testi-

mony that he ever used a dangerous weapon to promote the distribution of marijuana. Consequently, Rufener finds that this evidence was prejudicial because it made him appear a violent and dangerous individual and had no bearing on the sales leading to his arrest.

This would likely be Rufener's strongest argument. At trial,[1] however, he only objected to the evidence in general terms on relevancy grounds. Since before the turn of the century we have consistently held that an objection to evidence worded in terms such as "incompetent, irrelevant and immaterial" to be too general to preserve the issue on appeal. *Flathers v. Wilson & Co.*, 62 S.D. 548, 551, 255 N.W. 149, 151 (1934); *Moberg v. Scott*, 42 S.D. 372, 377, 175 N.W. 559, 561 (1919); *Ellwein v. Town of Roscoe*, 42 S.D. 298, 303, 174 N.W. 748, 749 (1919); *Bright v. Ecker*, 9 S.D. 449, 452, 69 N.W. 824, 824 (1897). That principle is now mandated by statute. SDCL 19-9-3(1).[2] The reason for the rule is twofold: (1) to enable the trial judge to understand the precise question upon which he has to rule and to relieve him of the burden of searching for the basis of the objection; and (2) to afford the opposing party an opportunity to obviate the objection. *Bright*, 9 S.D. at 451, 69 N.W. at 824. It follows, as provided by SDCL 19-9-3, that error may not be predicated upon such an insufficient objection.

We find the plain error doctrine, established by SDCL 19-9-6 and SDCL 23A-44-15, inapplicable to the admission of the pistol and marijuana found in the car. Moreover, even assuming inadmissibility of these items, it could be no more than harmless error. Given the totality of the evidence, we are satisfied that even absent the challenged evidence, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty. *See State v. Chief Eagle*, 377 N.W.2d 141, 144 (S.D.

1985); *High Elk v. State*, 344 N.W.2d 497, 501-02 (S.D.1984).

Rufener argues that when Agent Dahl was allowed to impeach State's witness Nancy Pierson, irrelevant bad act evidence improperly came in the back door. Rufener insists that initial questions to Pierson about a 1983 conversation with Dahl, which Dahl impeached, were extremely remote and constituted reversible error, especially since Pierson was called as a State's witness for the purpose of later impeachment by Dahl. He cites *State v. Kietzke*, 85 S.D. 502, 507, 186 N.W.2d 551, 554 (S.D.1971) for the proposition that a party cannot cross-examine or impeach his own witness and that Pierson did not fall into any of the exceptions noted in *Kietzke*.

Initially, we note it is now settled that a party may impeach his own witness. SDCL 19-14-8. Moreover, Dahl's statements were properly admissible for impeachment purposes under SDCL 19-14-8 because, according to the record, the four requirements established by *United States v. Rogers*, 549 F.2d 490, 495-97 (8th Cir. 1976), which need to be satisfied before prior inconsistent statements may be used for impeachment at trial were met: (1) inconsistency, (2) relevancy, (3) compliance with SDCL 19-14-24, & -25 on use of extrinsic evidence and affording the witness an opportunity to explain or deny a prior statement, and (4) a limiting instruction to the jury on the purpose of prior inconsistent statements. *See State v. Gage*, 302 N.W.2d 793, 798-99 (S.D.1981). The questions asked of Pierson[3] and Dahl's statements showed, or attempted to show, a common scheme, design, system or plan to commit the sort of crimes charged and, therefore, constituted relevant, proper "other act" evidence. Moreover, the portion of Dahl's testimony relating to Pierson's inconsistent statement was limited.

---

1. Rufener's counsel on this appeal was not his trial counsel.

2. SDCL 19-9-3(1) is virtually identical to Federal Rule of Evidence 103(a) and was adopted from Supreme Court Rule 78-2, Rule 103(a).

3. Pierson was not questioned about Rufener's earlier possession of marijuana charge.

The jury was given a cautionary instruction at the time of the impeachment and also at the close of all evidence.

 Relying on SDCL 23A-6-23, Rufener next contends he should not have been tried for all three counts in the same trial, particularly since he filed a notice of alibi defenses and because State's witnesses could not pinpoint the dates for Counts I and II. He notes that the three counts did not involve the same transaction and argues that their similarity resulted in prejudice to him.

This court has held that a defendant has no absolute right to separate trials. Whether counts will be tried separately is within the discretion of the trial court. *State v. Maves*, 358 N.W.2d 805, 809 (S.D. 1984) (and cases cited therein). We find no abuse of discretion. The record reveals the trial court carefully considered the matter and mitigated any potential prejudice by appropriate cautionary instructions to consider each count separately. Essentially the same witnesses were involved in all three transactions. However, each transaction occurred on a different date and testimony was sufficient to allow the jury to clearly distinguish the three counts.

 Finally, Rufener challenges the sufficiency of the evidence to support his conviction. The standard for determining the sufficiency of evidence to sustain a verdict is:

> whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt. In making this determination, this court will accept that evidence and the most favorable inferences that can fairly be drawn therefrom which will support the verdict.

*State v. Lien*, 305 N.W.2d 388, 389 (S.D. 1981) (*quoting State v. Wilson*, 297 N.W.2d 477, 480 (S.D.1980)).

Upon reviewing all the evidence, we find it was clearly sufficient to convict Rufener on each of the three counts charged: that Rufener on or about October 18, 26, and 27, 1984, in Minnehaha County, had a large quantity of marijuana in his possession; Rufener then distributed a quantity of the marijuana to another person, Roger Persing; and, the amount of marijuana distributed each time was more than one pound.

The judgment is affirmed.

MORGAN and WUEST, JJ., concur specially.

HENDERSON and SABERS, JJ., dissent.

MORGAN, Justice (concurring specially).

I concur specially because I do not agree with the majority disposition of the issue on Dahl's impeachment testimony. As I review the record, it appears that Nancy Pierson, Rufener's girl friend, was called by the State for the sole purpose of opening the door for Dahl to testify as to certain prior "bad acts" under the guise of impeachment of Pierson. In *State v. Gage*, 302 N.W.2d 793 (S.D.1981), we described a similar situation:

> [T]his case is one in which a witness (the girl friend) was called by the State only to serve as a 'strawman' for the introduction of inadmissible hearsay (by the informant). The State called the girl friend on the pretense of having her impeach appellant, but she did not do so, and there is nothing in the record to indicate that the State actually thought that she would do so.

*Id.* at 799.

In this case, at an *in camera* session regarding Pierson's testimony, the state's attorney expressed no surprise that the witness answered as she did, denying the conversations.

In *Gage, supra*, we acknowledged the propriety of a party impeaching his own witness under SDCL 19-14-8. We likewise condemned the

> obvious subterfuge by the State to get the informant's testimony, consisting only of inadmissible hearsay, before the jury under the guise of impeachment. Such 'back dooring' of hearsay is not indicative of fair trial tactics, and the

trial court in this case should have sustained defense counsel's objection to the testimony on the basis that it was hearsay.

302 N.W.2d at 799.

In this case, the proposed testimony regarded prior "bad acts" and I do not agree with the majority holding that the questions asked of Pierson and Dahl were proper. SDCL 19-12-5 has been much abused by this court. The first sentence: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith" has been entirely swallowed up by the second sentence: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." I think that the trial court erred in admitting the evidence under SDCL 19-12-5 and under our holding in *Gage, supra.*

However, because I do not think that the testimony was particularly crucial to the guilty verdict, I would have to say that it was harmless error.

WUEST, Justice (concurring specially).

The State should not have offered evidence of the firearm and marijuana found in the car. The court should not have admitted it, although the defense objection was too general. If the evidence of guilt was not so strong, I would probably vote to reverse. However, given the totality of the evidence, I concur.

HENDERSON, Justice (dissenting).

I cannot join this decision. It relies upon past decisions wherein I have dissented. It reaches a result contrary to my common sense and experience. Most of all, I dissent because this defendant was denied a fair trial. It is true that the defendant is not entitled to a perfect trial, but he is entitled to a fair trial. *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36

L.Ed.2d 208 (1973). It appears to me that the bad acts evidence was quite prejudicial. My many dissents on the bad acts evidence rule have been in vain but this does not mean that they have been wrong. *See State v. Chief Eagle*, 377 N.W.2d 141, 147 (S.D.1985) (Henderson, J., dissenting); and *State v. Wedemann*, 339 N.W.2d 112, 116 (S.D.1983) (Henderson, J., dissenting). Here, Dietrich's testimony about prior purchases—prior bad acts—does not demonstrate a common scheme, method, or plan which is individually attributable to the defendant. On the contrary, this testimony only relates aspects which are common to nearly all bulk drug distributions, i.e., one pound bags, devices with which to transport, and points of rendezvous. In my opinion, the trial court abused its discretion in admitting evidence of prior unproven acts.

Furthermore, there was an intentional improper impeachment of a witness herein. The State called Nancy Pierson and inquired about her prior conversations with Agent Dahl. When the State did not receive the desired answers, however, it called Agent Dahl to testify to such conversations so as to impeach Pierson and gain admission of otherwise inadmissible evidence. In *State v. Gage*, 302 N.W.2d 793 (S.D.1981), we condemned such tactics. Here, too, I would not condone the admission of such testimony, for the inconsistency did not relate to a matter of sufficient relevancy that the State's case would be adversely affected if the inconsistent testimony of Pierson was allowed to stand. *Gage.*

As regards further evidentiary error, Detective Blades' testimony about a .357 magnum pistol, a small bag of marijuana, and a marijuana cigarette, was objected to upon the basis of relevancy.* Relevancy is the proper objection under SDCL 19-12-5. When ruling upon the admission of other crimes, wrongs, or acts, the trial court must first determine its relevance. *State*

---

* There was no testimony that defendant ever used this weapon to promote distribution of marijuana. Clearly, this evidence was introduced to portray that defendant was a dangerous individual. It was not relevant.

*v. Means,* 363 N.W.2d 565 (S.D.1985). So, pray, why is an objection on the basis of relevancy an incorrect objection? Once relevancy is determined, it behooves the trial court to determine if the probative value is outweighed by the danger of unfair prejudice. *Id.* Then, this Court determines if there has been an abuse of discretion in the balancing function of the trial court. Note that this general concept is not treated in the majority opinion and the all-sweeping phraseology of the *Rose* citation is used to achieve a favorable outcome for the State. If the majority opinion is holding that a defense lawyer has to object upon the basis, stated as follows: "Your Honor, I object upon the basis that this is improper prior bad acts testimony," the majority opinion is compounding the unfavorable exposure of a defendant before a jury. It is my understanding from this record that the State of South Dakota did not argue that the pistol, the small bag of marijuana, and the marijuana cigarette were probative evidence as related to the offenses charged. Pray then, why did the State seek to introduce it? It is obvious. It was introduced to persuade by illegitimate means and prejudiced the jury against the defendant.

Finally, this Court has eroded, if not eliminated, in past decisions, all semblance of a right to sever charges in a jury case. See this author's dissent in *State v. Maves,* 358 N.W.2d 805, 811 (S.D.1984) (Henderson, J., dissenting). Obviously, the joinder of all three counts for trial exacerbated the bad acts evidence. Separate counts of the indictment each involved separate transactions; thus, the jury was able to ponder that the defendant must have committed all three crimes simply by an assumption that if he committed any one of the crimes, he probably committed the other two. A cautionary instruction is a nicety on paper. It theoretically cleaves. It does not, however, erase by last-minute laundering the tremendous influence of an improper joinder. Quae non valeant singula juncta juvant. Lat. Things which do not avail when separate, when joined avail. The assertion of separate defenses is recognized as a valid basis for severing trials. *See* 2 W. LaFave & J. Israel, *Criminal Procedure,* § 17.1(c), at 355–56 (1984). Defendant, at least on paper, had a verifiable alibi with respect to count three, that at "approximately 9:00 a.m. [on the date of the alleged third transaction], defendant was at his place of residence, the address being Box 282, Rural Route 2, Sioux Falls, South Dakota" and defendant then included the names of two witnesses. Defendant filed this two months before the hearing on pretrial motions. As one reads over the judgments of conviction in this case, it is noted that the defendant was sentenced to six years on each count and for "separate transactions." Trying counts one and two with count three unquestionably prejudiced the defendant on count three.

It is assumed that we have rules of evidence to obtain a quality of proof. Law is created by a written, accepted body of rules which guide society. Justice, on the other hand, is that which is morally right— that which appeals to the conscience. Justice, then, in its broad sense, becomes a subjective determination. Justice is seen in the eyes of the beholder. Law, on the other hand, is objective. We observe it as being written, legislated, and codified. Or decided.

Justice Oliver Wendell Holmes believed most strongly in law, i.e., an accepted body of rules. Surely, evidence is a body of law with an accepted body of rules. If a defendant is denied his evidentiary rights, which have been developed to bring forth the truth, he is being denied the Law. When this reaches prejudicial error, it has denied an accused a fair trial. A perfect illustration of my remarks is exemplified by the recent holding in *State v. Dokken,* 385 N.W.2d 493 (S.D.1986). *See also, State v. Remacle,* 386 N.W.2d 38, 40 (S.D.1986) (Henderson, J., specially concurring). In *Dokken,* which I specially joined, we reversed a first-degree manslaughter conviction, as the rules of evidence were violated to a great extent. *Dokken* adopted *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which I relied heavily upon in my dissent in *Chief Eagle.*

Note that the author of this opinion is the same author as the *Chief Eagle* opinion. Thus, the section in the majority opinion pertaining to harmless error is déjà vu per *Chief Eagle*. Here, the State again prevails with the prosecutor's friend, harmless error.

Judge Learned Hand told the story of being with Justice Holmes as follows:

It was a Saturday when the [United States Supreme Court] was to confer. It was before he had a motor car, and we jogged along in an old coupé. When we got down to the Capitol, I wanted to provoke a response, so as he walked off I said to him, "Well, sir, goodbye. Do Justice!" He turned quite sharply and he said, "Come here. Come here." I answered, "Oh, I know, I know." He replied, "That is not my job. My job is to play the game according to the rules." I have never forgotten that. I have tried to follow, though often times I found that I didn't know what the rules were.

R. Aldisert, *The Judicial Process* at 185 (1976).

The great Holmes, of course, meant that justice was to be achieved by application of objective legal rules. There can be no doubt that to accomplish justice, we lawyers must do it within a framework of objective legal rules. This includes observing and applying the rules of evidence. In this case, it strikes me that this was not accomplished and I therefore respectfully dissent.

SABERS, Justice (dissenting).

I dissent. The defendant did not receive a fair trial for all of the following reasons.

### 1. *Accomplice Testimony*

The defendant proposed two instructions relating to accomplice testimony, both of which were refused by the trial court. Defendant's proposed Instruction Number 1 stated the general rule that a conviction of the crime charged cannot be based upon the testimony of an accomplice unless the accomplice is independently corroborated. Defendant's proposed Instruction Number 6 was the standard instruction which began

"You are instructed that the testimony of an accomplice ought to be viewed with distrust."

SDCL 23A–22–8 provides:

A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

Although it has generally been held that a purchaser of illegal drugs is not an accomplice to the crime of selling drugs, *State v. Fox*, 313 N.W.2d 38, 40 (S.D.1981), the definition of an accomplice, often cited by this court, was given in *State v. Johnson*, 81 S.D. 600, 606, 139 N.W.2d 232, 236 (1965): "an accomplice is one who is liable to the prosecution for the identical offense charged against the defendant on trial. To render one an accomplice, he must in some manner knowingly and with criminal intent participate in and associate or concur with another in the commission of a crime." (emphasis added). This court has also cited with approval *Gray v. State*, 585 P.2d 357, 359 (Okla.Crim.App.1978), which stated: "It is necessary that a charge against that witness could have arisen from the same occurrence as the crime for which the defendant was tried."

In this case, the witness, Persing, (accomplice and confessed drug dealer), could have been charged with distributing marijuana, with conspiracy to distribute marijuana, with maintaining a house at 448 South Williams for purposes of use or distribution of marijuana, or with possession of marijuana with intent to distribute. If Persing was telling the truth, he was certainly engaged in the commission of a crime with the defendant. Here, there was enough evidence to warrant the accomplice instructions requested by defendant, but instead the trial court ruled as a matter of law, that Persing was not an accomplice. This was a question of fact for the jury and the trial court's failure to give the request-

ed instructions constitutes reversible error. *Johnson*, 81 S.D. at 607, 139 N.W.2d at 236; *State v. McBride*, 296 N.W.2d 551, 554–555 (S.D.1980); *Grooms v. State*, 320 N.W.2d 149, 151 (S.D.1982); *State v. Dominiack*, 334 N.W.2d 51, 53–54 (S.D.1983).

In *Dominiack, supra*, this court reversed Dominiack's conviction, even though an accomplice instruction was given. We concluded that an individual named Miner was an accomplice as a matter of law. 334 N.W.2d at 54. In other words, Miner stood in the position of Persing, and this court found that he was an accomplice as a matter of law. At the very least, a fact question was presented as to whether or not Persing was an accomplice of the defendant and the requested instructions should have been given.

The necessity of viewing the testimony of a confessed drug dealer with distrust is even more evident when one considers that they are "in trouble" with the law, their illegal business is stopped, and they are generally looking for the best possible deal from the State with nothing to sell or trade except testimony.

The State argues that even if Persing was an accomplice, there was sufficient evidence introduced to corroborate his testimony. Defendant argues that there was no evidence, independent of Persing, which connected defendant with Counts I and II charged in the indictment. Evidence which merely raises conjecture or suspicion that the accused is the guilty person is not sufficiently corroborative of the accomplice to warrant convictions. *Stanton v. State*, 397 So.2d 227 (Ala.Crim.App.1981). Because the corroborative evidence was insufficient, it cannot be said that the trial court's failure to give the instructions was harmless error.

### 2. *Prior Bad Acts*

The State introduced testimony of drug dealer David Dietrich, who testified concerning prior drug purchases from the defendant. None of these prior drug purchases had anything whatsoever to do with any of the charges contained in Counts I, II, or III of the indictment. This evidence was admitted on the basis of showing identity, common scheme, method, or plan. *See:* SDCL 19–12–5. Defendant argues, however, that allegations about selling marijuana in motels, wrapped in individual one pound bags enclosed in a duffle bag or suitcase and sometimes on credit, does not put an individual's "signature" on a later alleged sale. *See: State v. Houghton,** 272 N.W.2d 788, 792 (S.D.1978). Rufener further argues that this kind of evidence, which is common in distribution cases, does not come close to the standards set forth in *Houghton* for the admission of "other acts evidence." 272 N.W.2d at 790–791. This evidence was extremely prejudicial, not only because of the very similarity with alleged prior sales, but because it represented evidence of the defendant acting in conformity with prior unproven acts which is prohibited under SDCL 19–12–5. As stated above, none of this testimony had anything to do with proving that Rufener committed the crimes with which he was charged, but simply prejudiced the jury against him on the basis of unproven, prior bad acts. The trial court's failure to invoke the safeguard of SDCL 19–12–3 to protect Rufener from undue prejudice, served to prevent him from receiving a fair trial.

### 3. *More Prior Bad Acts*

After defendant's arrest, his rented vehicle was searched by officers who discovered an illegally concealed .357 magnum

---

* Overruled on other grounds in *State v. Willis*, 370 N.W.2d 193, 198 (S.D.1985):

> ... In *Houghton*, this Court held that intent was not an element of rape in South Dakota, and therefore, the evidence of other alleged rapes was inadmissible to prove intent. ... When appellant claims innocence, such as he does here, by a mitigating factor, namely, consent, he thus begets the establishment of

intent as a material issue in the crime of rape. Therefore, we hold that an admission of 'other acts evidence' to prove intent is not contingent on it being a specific element of the crime charged, but is dependent on the establishment of intent as a material issue. Perforce, and deeming that *Houghton* has been so seriously eroded in the past, we lay to rest its evidentiary holding.

pistol, a small bag of marijuana, and a marijuana cigarette. Once again, despite the fact that these three items had no real bearing on any one of the three counts as charged in the indictment, they were received in evidence over defendant's objection. None of this evidence bore any relevancy to the methods allegedly employed by the defendant to distribute marijuana. Likewise, there was no testimony that the defendant ever used a dangerous weapon to promote his alleged distribution of marijuana, and this evidence made him appear to the jury as a violent, dangerous individual.

The State argues that the defendant did not preserve for appeal his objections concerning the gun and the marijuana because the objection was on relevancy, not specifically other bad acts. The defendant in a criminal case would be harmed if defense counsel were required to object "prior bad acts" or something similar, in front of the jury, even if the trial court sustained the objection. Relevancy is the proper objection under SDCL 19–12–5. The State did not even argue that the pistol and small bag of marijuana were probative of the offense charged. This evidence had no probative value, was clearly prejudicial, and its introduction merits reversal.

### 4. Impeachment of State's Own Witness

In its case in chief, the State called the defendant's girlfriend, Nancy Pierson, to the stand and asked her several incriminating questions about statements she allegedly made to Officer Duane Dahl. The State knew that she would deny having made any such statements. For the trial court to allow the State to question their own witness in this fashion, knowing full well that she would deny having made these statements to Officer Dahl, was improper and highly prejudicial to the defendant's case. Despite this, the trial court allowed the State to admit the testimony of Duane Dahl who stated that Nancy Pierson told him in 1983, that Rufener was bringing hundreds of pounds of marijuana into South Dakota. The conduct of the State

was clearly improper: "The device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue ..." *People v. Bennett*, 393 Mich. 445, 449, 224 N.W.2d 840, 842 (1975).

This evidence should not have been admitted because 1) it was more prejudicial than probative of any facts related to the indictment, and 2) it was improper impeachment of a witness, because it does not satisfy the second requirement set forth in *State v. Gage*, 302 N.W.2d 793, 798 (S.D. 1981). Neither *Gage* nor *State v. O'Brien*, 318 N.W.2d 108 (S.D.1982), involved impeachment of a witness who was called solely to be impeached.

In *United States v. Morlang*, 531 F.2d 183 (4th Cir.1975), the Fourth Circuit Court of Appeals reversed the defendant's conviction for conspiracy to bribe the director of West Virginia's Federal Housing Administration (FHA), in connection with an FHA housing project. The court held, in part, that the trial court erred by admitting a prosecution witness' prior inconsistent statement which implicated defendant, where the witness was called solely for the purpose of impeaching him. *Id.* at 189. The court stated:

> We must be mindful of the fact that prior unsworn statements of a witness are mere hearsay and are, as such, generally inadmissible as affirmative proof. The introduction of such testimony, even where limited to impeachment, necessarily increases the possibility that a defendant may be convicted on the basis of unsworn evidence, for despite proper instructions to the jury, it is often difficult for them to distinguish between impeachment and substantive evidence.

*Id.* at 190.

Here, Nancy Pierson's alleged statements to Officer Dahl were also unsworn. As such, Dahl's testimony amounted to unreliable hearsay which was highly prejudicial to Rufener's case. Therefore, the trial court erred in failing to exclude this testimony under SDCL 19–12–3 because its probative value was outweighed by its prej-

udicial effect. According to Louisell and Mueller, 3 *Federal Evidence*, § 299 (1979), Rule 403 of the Federal Rules of Evidence, (SDCL 19–12–3), not only empowers, but obligates courts to prevent abuse in connection with attempts by a party to impeach his own witness by use of the latter's prior inconsistent statements.

This was improper use of impeachment evidence; it may have been proper had the defense called Nancy Pierson as a witness, and on direct examination asked her the same questions which the prosecutor had asked in the prosecution's case in chief. This was not the case, however, and the so called "impeachment testimony" by Duane Dahl was obviously anticipated by the prosecution when they called Nancy Pierson as a witness, especially where she was not found to be a hostile witness. Although the common law rule that a party cannot cross-examine or impeach his own witness has been abandoned by Rule 607 of the Federal Rules of Evidence, (SDCL 19–14–8), "the overwhelming weight of authority is, however, that impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *Morlang*, 531 F.2d at 190. *See also: United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir.1984) ("Although *Morlang* was decided before the Federal Rules of Evidence became effective, the limitation [quoted above] on the prosecutor's rights under Rule 607 has been accepted in all circuits that have considered the issue.").

In summary, the State relies upon:

1. the *un*corroborated testimony of an accomplice, who happens to be a confessed drug dealer,

2. to obtain a conviction from an *im*properly instructed jury, who has been tainted by:

3. the testimony of prior *un*proven *un*related bad acts and events, some of which come from *another* "confessed drug dealer" and some from the State's "own" *im*properly impeached witness.

### 5. *Prejudicial and Cumulative Effect*

Any one of the above four examples is in and of itself sufficient to constitute reversible error. Any one would prevent defendant from having a fair trial. All four of the above examples paint the defendant as a bad actor. They do not prove that the defendant committed the bad acts charged in the three counts of the indictment. Cumulatively, they constituted prejudicial and reversible error and denied defendant a fair trial. *State v. Dokken*, 385 N.W.2d 493, 494 (S.D.1986).