**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Eugene RUFENER, Defendant and Appellant.**

**No. 15039.**

Supreme Court of South Dakota.

Argued on Rehearing Nov. 18, 1986.

Decided March 4, 1987.

**742**

Mark A. Moreno, Asst. Atty. Gen., for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Thomas K. Wilka of Hagen & Wilka, Sioux Falls, for defendant and appellant.

MORGAN, Justice (on rehearing).

This case comes before us on a petition for rehearing. The original opinion was filed August 13, 1986. *State v. Rufener,* 392 N.W.2d 424 (S.D.1986) (*Rufener I*). We affirm in part, reverse in part, and remand for a new trial.

In his petition for rehearing, Rufener urges three separate contentions. Initially, Rufener claims that this court incorrectly upheld the trial court's refusal of a requested accomplice instruction. Secondly, Rufener contends that this court erroneously upheld the trial court's admission of evidence, specifically the pistol and marijuana found in Rufener's car. Thirdly, Rufener contends this court erroneously upheld the trial court's admission of testimony of Dahl to impeach the testimony of Pierson.

Rufener was indicted by a Minnehaha County Grand Jury and later convicted on three separate counts of distributing one pound or more of marijuana to Roger Persing (Persing). Testimony and evidence offered at trial indicates that Persing would buy the marijuana from Rufener and later resell the marijuana in smaller quantities. Testimony also reveals that Persing assisted Rufener in arranging sales and in packaging the marijuana.

The pistol, a small amount of marijuana, and the marijuana cigarettes, items claimed inadmissible by Rufener as part of his second contention on rehearing, were obtained during a search of his rented vehicle incident to a valid search conducted with a warrant. The trial court admitted this evidence in spite of objections by defendant's counsel. Counsel objected, stating that the evidence was not "relevant to the charges pending against my client."

Nancy Pierson, Rufener's girl friend, was called to testify primarily about two subjects. The prosecution questioned Pierson about setting up a telephone call between Rufener and Persing. Pierson admitted arranging this call, but claimed she knew nothing about its content. The prosecution also inquired whether Pierson had ever spoken with agent Duane Dahl (Dahl) about Rufener's involvement with the transportation, sale, and distribution of marijuana. Pierson admitted talking to Dahl but denied that she had discussed marijuana dealing, whereupon the prosecution produced Dahl on rebuttal. Dahl testified over hearsay objection and related to the jury hearsay statements Pierson allegedly made to Dahl in April of 1983.

Initially, we believe Rufener's first argument on rehearing is without merit. As the majority correctly noted in *Rufener I*, "[s]ince Persing was no more than a purchaser at the time of the alleged criminal acts, the trial court did not err in finding that Persing and Rufener could not have been charged with the same crime arising from each transaction." 392 N.W.2d at 426. It is important to note that Rufener was charged with distributing

marijuana to Persing. It is obvious that Persing could not be charged with distributing marijuana to himself, therefore he was not an accomplice to these acts. *State v. Byrum*, 399 N.W.2d 334 (S.D.1987); *State v. Fox*, 313 N.W.2d 38 (S.D.1981); *State v. Johnson*, 81 S.D. 600, 139 N.W.2d 232 (S.D.1965). We adhere to our holding in *Rufener I* on this issue.

We next examine the admission of the pistol and marijuana found in Rufener's rented vehicle. In *Rufener I*, the majority noted that Rufener presented a strong argument on this issue, however, the majority went on to hold that the objection interposed by counsel was inadequate and did not meet the requirements of SDCL 19–9–3(1).[1] The cases cited by the majority in *Rufener I* establish that a general objection stated in terms such as "incompetent, irrelevant and immaterial" are too general to preserve the issue for appeal. We note, however, that those cases go on to say that an exception exists to this rule. "The only exception to such rule is where it clearly appears that the objection could not have been obviated had the same been specifically pointed out." *Moberg v. Scott*, 42 S.D. 372, 377, 175 N.W. 559, 561 (1919). *See Flathers v. Wilson & Co.*, 62 S.D. 548, 255 N.W. 149 (1934).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1 (Rule 401). "Evidence which is not relevant is not admissible." SDCL 19–12–2 (Rule 402). While we have some doubts as to the admissibility of the marijuana taken from Rufener's car, we do not believe that the simple relevancy objection was sufficient to preserve that issue for appeal. We are, however, convinced that the .357 Mag-

num pistol introduced into evidence, paraded before the jury, and admitted as substantive evidence, did not have any tendency to make the existence of any fact that is of consequence to the determination of whether Rufener distributed marijuana more probable or less probable than it would be without the pistol. The objection to the admission of the pistol interposed by counsel on the grounds of relevancy was correct under SDCL 19–12–2.

In addition, we believe that even if the objection was not proper under SDCL 19–12–2, it was sufficient under SDCL 19–9–3(1). We believe the grounds for the objection were clearly apparent to the trial judge, since the admission of the handgun was also obviously improper bad acts evidence under SDCL 19–12–5. Prior to determining whether the evidence is admissible as "bad act" evidence, the trial court must determine its relevancy. *State v. Pedde*, 334 N.W.2d 41 (S.D.1983). Furthermore, even if the objection would have been improper under any of the foregoing authorities, we hold that the objection to at least the admissibility of the pistol could not have been obviated, thus the rule of *Moberg*, *Flathers*, and SDCL 19–9–3 is not applicable. We find no proper evidentiary purpose for the pistol in the case at hand.

Finally, we address the issue of the admissibility of Dahl's statements impeaching the testimony of Pierson. In *Rufener I*, we reiterated a four-point test to be satisfied before prior inconsistent statements may be used for impeachment at trial. These four requirements were set out in *United States v. Rogers*, 549 F.2d 490 (8th Cir.1976) and adopted by this court in *State v. Gage*, 302 N.W.2d 793 (S.D.1981). While this four-point test may arguably have been met by the prosecution in the case at hand, we note that *Gage* added another

---

1. SDCL 19–9–3 (Rule 103(a)) provides:

    Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
    (1) In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
    (2) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

requirement when the witness "was called by the State only to serve as a 'strawman' for the introduction of inadmissible hearsay...." *Gage,* 302 N.W.2d at 799.

In *Gage,* we specifically recognized and adopted the rule of *United States v. Morlang,* 531 F.2d 183, 190 (4th Cir.1975) which states: "Despite the fact that impeachment of one's own witness may be permitted, this does not go so far as to permit the use of the rule as a subterfuge to get to the jury evidence otherwise inadmissible."

Rule 607 of the Federal Rules of Evidence provides: 'The credibility of a witness may be attacked by any party, including the party calling him.' But it would be an abuse of the rule, in a criminal case, for the prosecution to call a witness that it knew would not give useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence—or, if it didn't miss it, would ignore it. The purpose would not be to impeach the witness but to put in hearsay as substantive evidence against the defendant, which Rule 607 does not contemplate or authorize. We thus agree that 'impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible.' *United States v. Morlang,* 531 F.2d 183, 190 (4th Cir. 1975). Although *Morlang* was decided before the Federal Rules of Evidence became effective, the limitation that we have quoted on the prosecutor's rights under Rule 607 has been accepted in all circuits that have considered the issue. *United States v. Webster,* 734 F.2d 1191, 1192 (7th Cir.1984). *See United States v. Hogan,* 763 F.2d 697 (5th Cir.1985); *United States v. Faye,* 668 F.2d 375 (8th Cir.1981); *United States v. DeLillo,* 620 F.2d 939 (2d

Cir.1980); *United States v. Rogers,* 549 F.2d 490 (8th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977). *See also United States v. MacDonald,* 688 F.2d 224, 123 (4th Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983).

Some courts believe the *Morlang* rule is a limitation grafted on Rule 607 (SDCL 19–14–8) [2] while other authorities apply the *Morlang* rule under Rule 403 (SDCL 19–12–3).[3] In *Gage,* we applied the *Morlang* rule as a limitation to SDCL 19–14–8 (Rule 607). In addition, as we stated in *Gage:* "Such 'back dooring' of hearsay is not indicative of fair trial tactics, and the trial court in this case should have sustained defense counsel's objection to the testimony on the basis that it was hearsay." *Gage,* 302 N.W.2d at 799. An objection based on inadmissible hearsay was also interposed in this case.

■ While we are not prepared to say that impeachment testimony of this nature should never be allowed, we believe the trial court must exercise extreme caution when the impeaching evidence goes beyond simply proving that the witness was incredible and begins to persuade by illegitimate means.

■ It is also important to evaluate the curative effect of the limiting instruction given the jury by the trial court. Just before the impeachment testimony was given by Dahl the court instructed the jury as follows:

I want to tell the jury one matter before there is an answer. There is an attempt being made by the State of South Dakota to impeach that inconsistency in the testimony of one of the prior witnesses having to do with statements she made in the past. I want you to understand it is only for the purposes of determining her ability to recall and re-

2. *See Webster, supra; DeLillo, supra.*

3. *See MacDonald, supra. See also* 22 C. Wright & K. Graham, Federal Practice & Procedure § 5215, at 274–75 (1978) ("In Rule 403, 'prejudice' does not mean the damage to the oppo-

nent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means.")

member and develop contradictions possibly as to bias and interest and prejudice. The contradictory statement is not to be used concerning the truth of the charges of why we're here. There will be a jury instruction on that at a later time.

Instruction No. 16 states:

The credibility of the witness, Nancy Pierson, was attacked by introducing evidence that on some former occasion she made a statement on a matter of fact or acted in a manner inconsistent with her testimony in this case on a matter material to the issues. Evidence of this kind may be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness, but you must not consider any such prior statement as establishing the truth of any fact contained in that statement.

We do not believe these curative instructions atone for the overreaching of the prosecutor. The prosecution knew before the testimony was offered to the jury that Pierson was going to deny having the conversation with Dahl. This is not a situation like that presented in *United States v. Webster, supra,* where the prosecutor asked for but was denied a chance to examine the witness outside the presence of the jury because she did not know what he would say. The prosecutor in this case knew full well what Pierson was going to say and in fact depended on her denial to gain admittance of the inadmissible hearsay through Dahl's testimony.

We are not prepared to say that the improper admission of the evidence regarding the pistol and that Dahl's testimony was harmless error. We affirm in part, reverse in part, and remand for a new trial.

WUEST, C.J., concurs in result.

HENDERSON and SABERS, JJ., concur in part and dissent in part.

FOSHEIM, Retired Justice, dissents.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

WUEST, Chief Justice (concurring in result).

In *Rufener I,* I concurred with the majority opinion believing the admission of the firearm and marijuana was harmless error and the objection was too general. Upon reconsideration, it is my opinion the admission of those items was prejudicial and therefore vote to reverse on those issues. Otherwise, I adhere to the decision rendered in *Rufener I.*

HENDERSON, Justice (concurring in part, dissenting in part).

In this concurrence in part and dissent in part, I make reference, *in toto,* to my dissent in *Rufener I,* 392 N.W.2d at 429, hereby reiterating my previous work product.

It appears that Rufener will now have a new trial and I am gratified with the different perception of this Court. However, I do still hew to my viewpoints, in this case, concerning the right to sever charges for separate trials resulting from separate defenses. Since *Rufener I* was handed down, this author wrote on this same subject (which he has often heretofore by way of dissent) and my most recent and elaborated viewpoints on this subject are found in *State v. Breed,* 399 N.W.2d 311, 315 (S.D. 1987) (Henderson, J., specially concurring).

In *Rufener I,* Justice Sabers, in his dissent, did not touch upon what I deemed to be improper joinder. I did not touch upon one of the bases of his dissent, namely, accomplice testimony. I have deliberated over his position with, hopefully, academic pursuit for the right legal position to be applied in this set of facts. I am now convinced that his position, as regards this set of facts, is correct. Therefore, in my opinion, the accomplice instruction should be given below at the new trial. As Justice Sabers reasons, the accomplice question should go to the jury. Under the circumstances of the dealings between Rufener

and Persing, it is, at least, a question of fact for the jury to determine if Persing was an accomplice. As I did not touch on this subject in *Rufener I*, and as Justice Sabers has again, and more explicitly, set forth his position on accomplice instructions, I am compelled herein to voice my stand.

SABERS, Justice (concurring in part & dissenting in part).

I concur with the majority opinion except for that portion which relates to the lack of necessity of accomplice instructions, from which I dissent.

In this case, ("*Rufener II*"), the majority is furthering the error made in *State v. Rufener*, 392 N.W.2d 424 (S.D.1986) ("*Rufener I*"), concerning accomplice testimony and instructions. The error is the continuing refusal to require accomplice instructions. This error is based on the mistaken conclusion that "Persing was no more than a purchaser at the time of the alleged criminal acts." Persing was more than a purchaser—he was a business partner with Rufener. Persing testified that he and Rufener had a "business arrangement" in which Rufener gave Persing marijuana and received money only after Persing distributed it to others. Persing also testified that he arranged for his girlfriend to rent a hotel room for Rufener, that he helped Rufener package marijuana, and that he received marijuana from Rufener once or twice a month for two to three years. Persing was an accomplice because he in some manner knowingly and with criminal intent participated, associated or concurred with Rufener in the commission of the crimes for which Rufener was convicted. *State v. Dominiack*, 334 N.W.2d 51 (S.D. 1983); *State v. Johnson*, 81 S.D. 600, 139 N.W.2d 232 (1965).

I further dissent for all of the reasons set forth in my dissent in *Rufener I, supra*, which concerned accomplice testimony and instructions. As stated therein:

The necessity of viewing the testimony of a confessed drug dealer with distrust is even more evident when one considers

that they are 'in trouble' with the law, their illegal business is stopped, and they are generally looking for the best possible deal from the State with nothing to sell or trade except testimony.

392 N.W.2d at 432.

The failure to require an accomplice instruction violates the letter and spirit of SDCL 23A–22–8 which provides in part: "A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense."

### MAJORITY'S AUTHORITIES?

In support of their position, the majority cites to:

(1) *Rufener I, supra, (reversed on other grounds )*;

(2) *State v. Byrum*, 399 N.W.2d 334 (S.D.1987);

(3) *State v. Fox*, 313 N.W.2d 38 (S.D. 1981); and

(4) *Johnson, supra.*

Under the annotations to SDCL 23A–22–8, the one referencing *Fox, supra*, states: Where the witness purchased illegal drugs from defendant to resell to a paid police informer, *and there was nothing in the record to indicate the defendant knew the witness would resell the drugs to the informant*, the crimes of illegal possession and distribution of the witness and the defendant were separate and distinct acts and the witness was not an accomplice to the crimes of the defendant; therefore, testimony of the witness did not have to be corroborated to sustain the defendant's conviction. (emphasis added)

In other words, *Fox* is authority for Rufener's position and not the State's. This is so because it implies that if the defendant knew the witness would resell the drugs to the informant, the witness would have been an accomplice to the crimes of the defendant.

The fourth case cited by the majority is *Johnson, supra.* It is interesting to note

that this case is cited in the annotations under SDCL 23A–22–8 as "DECISIONS UNDER FORMER LAW." The reason is that at that time the law provided for accessories before and after the fact. The headnote reads:

Where the facts concerning the issue of whether witness was an accomplice were susceptible of different inferences, the court properly submitted such matter to the jury and instructed them as to the need for corroboration of the testimony of the witness if they found him to be an accomplice.

In other words, the question should go to the jury. In Rufener's case, it would not be error for the trial court to rule as a matter of law that Persing was an accomplice of Rufener because he was involved in a business arrangement involving crime. Even if it was proper for the court to refuse to give the instruction that Persing was an accomplice as a matter of law, it certainly was proper and necessary to give an instruction for the jury to determine whether or not Persing was an accomplice. To fail to do so was reversible error.

The *Johnson* decision is frequently cited for the definition of an accomplice as follows:

An accomplice is one who is liable to prosecution for the identical offense charged against the defendant on trial. To render one an accomplice he must in some manner knowingly and with criminal intent participate, associate or concur with another in the commission of a crime. (citation omitted).

81 S.D. at 606, 139 N.W.2d at 236.

Recent cases have improperly cited and relied upon the first part of the *Johnson* quotation and have omitted citing the second part. This is error. It is clear that both sentences must be read together and it is further clear that an accomplice instruction should be required when two people are engaged together in the commission of a crime. Here, Rufener and Persing were involved in the commission of a crime. The jury should have been instructed to determine whether or not Persing was an accomplice under South Dakota Pattern Jury Instructions (Criminal) 1–14–7: *Accomplice—Jury to Determine Whether Witness was an Accomplice.* To refuse to give this instruction was reversible error.

FOSHEIM, Retired Justice (dissenting).

I would adhere to the *Rufener I* opinion. I am still convinced the objection to the pistol on relevancy grounds was insufficient under SDCL 19–9–3(1) and the case authority cited in *Rufener I,* 392 N.W.2d at 427. As pointed out in our earlier opinion on this case:

The reason for the rule [dictating that an objection worded in terms such as 'incompetent, irrelevant and immaterial' is too general to preserve an issue on appeal] is two-fold: (1) to enable the trial judge to understand the precise question upon which he has to rule and to relieve him of the burden of searching for the basis of the objection; and (2) to afford the opposing party an opportunity to obviate the objection.

*Id.* To my mind, the current majority opinion does a disservice both to judges who must rule on such generalized objections, and to attorneys faced with answering such objections.